Haskell H. Marks, by Guardian, etc., Appellant, v. Rochester Railway Company, Respondent.

77    77
146a  181

77    77
41ap 69
41ap 74

*Negligence — when a master is liable to an employee of his servant's — duty to provide a safe place — degree of prudence required of a boy who is sui juris.*

Where a horse car cannot be drawn backward with safety to the passengers or property of the owner thereof with only one man to manage both the horse at one end and the brake at the other end of the car, the driver thereof has authority, from the necessity of the case, to procure assistance, and, in exercising such authority, stands in the place of his master, who is chargeable with the consequences to others of any abuse of discretion or neglect of duty in its exercise. The person who assists the driver at his request does not stand in the relation of a volunteer to the driver's employer, but in that of a temporary servant.

It is the duty of a driver acting for his employer to give such person employed by him a reasonably safe place in which to render the service required of him, and where the person so employed by the driver is a boy eleven years of age, it is a question for the jury to determine, in an action brought to recover damages for injuries sustained by him, whether the place in which he was put was or was not a reasonably safe place for a boy of his youth and inexperience.

Where the servant acts in the place of his master in employing another for a temporary service, he continues to hold that relation (and not that of a fellow-servant) to the party employed by him during the continuance of such employment, and his employer is chargeable with his negligence while that relation continues to exist.

Although a boy may be *sui juris*, and, therefore, chargeable with any negligence on his own part which contributes to occasion an accident, still, in judging the acts of the boy, the law does not hold him to the same standard of prudence and good judgment as if he were a man of mature years and experience.

APPEAL by the plaintiff, Haskell H. Marks, by guardian, from an order of the Supreme Court, made at the Monroe Circuit and entered in the office of the clerk of the county of Monroe on the 25th day of July, 1893, granting the defendant's motion for a new trial.

*E. Van Voorhis*, for the appellant.

*C. J. Bissell*, for the respondent.

DWIGHT, P. J.:

The action was to recover damages for a bodily injury sustained by the plaintiff when engaged in assisting one of the defendant's drivers, at his request, in the management of his car. It was one of the small cars drawn by one horse, and operated by one man. Such a car has the driver's platform and a brake on one end only, and a small platform at the other end, with steps for the entrance and exit of passengers. It is intended to be drawn only in one direction, and when the direction is reversed the car must be turned, end for end, by means of a turntable.

On the day of the accident in question two of these cars, running in opposite directions on a single track, met, by the mistake of one or both of the drivers, at a point where there was no turnout, and it became necessary that one of the cars should be drawn backward to some point where the other might pass it. But when one of these cars is drawn backward, the driver of the horse is separated from the brake by the length of the car, and is powerless to control its motion. The situation requires an assistant either to manage the brake or to drive the horse. In this case the driver called upon the plaintiff, a boy of eleven years of age, who was near by, cleaning snow from his father's sidewalk, to drive for him, and, having

hitched his horse to the hind end of the car, gave the reins to the plaintiff and himself took the brake at the other end.

The standing place of the plaintiff, as he drove, was the small platform before mentioned, not intended for anybody to stand upon, but merely a landing for the steps on either side. It was three feet four inches long, crosswise the car, and one foot ten inches wide from the end of the car outward. It was protected on its outer side only by a sheet iron " dash," in front of the door of the car, about twenty inches wide and thirty inches high, curved on the top and surrounded by an iron rod separated two or three inches from its edge. This rod added a few inches to the width of the guard and served as a hand rod by which passengers might aid themselves in mounting the steps. There was nothing interposed between the boy and the steps on either side and, his hands being employed with the reins, he could hold on to the car only by the weight of his body inclined against the dash. The body of the car projected nearly two feet on each side beyond the ends of the little platform on which he stood, and the steps were within the lines of the rails of the track.

While the car was proceeding in this manner a party of boys of the neighborhood, attracted, no doubt, by the novel apparition of a car drawn wrong end foremost, and driven by a boy of their acquaintance, jumped onto the platform where the plaintiff stood and began to make the car rock by jumping up and down, while some of them went inside. The driver, from his platform at the other end, halloed to them to get off and made a feint of rushing at them through the car to drive them off. At this, those of them who were within the car scurried out through the door in front of which the plaintiff stood, and all jumped off. In their haste they jostled the plaintiff off the narrow platform onto the ground. His leg was caught under the wheel and so crushed at the knee as to render an amputation necessary.

On the trial now under review the defendant, at the close of the plaintiff's case, moved for a dismissal of the complaint on the following grounds :

" 1. That there was no evidence that the defendant was guilty of any negligence which occasioned the injury to the plaintiff.

" 2. That, upon the plaintiff's own evidence, he was neither a

passenger nor an employee, but a mere volunteer, and the defendant owed no duty to the plaintiff either as a passenger or as employee.

" 3. That there was no evidence that the defendant's driver had any authority, express or implied, to employ the plaintiff to do anything in or about the management of the car or of the horse attached thereto.

" 4. That, assuming that the platform of the car upon which the plaintiff stood was an imperfect and unsafe place for him to stand, the defect, if any, was open and visible, and the plaintiff assumed any risk there might be in standing there to drive voluntarily.

" 5. Assuming that there was evidence from which the jury might find that such an emergency existed as gave the driver authority to employ the boy, and that the driver was guilty of negligence in calling to the boys to get off from the car while it was in motion, then the negligence from which the plaintiff suffered was the negligence of a co-servant, and the plaintiff could not recover."

The court denied the motion, and the defendant's counsel duly excepted.

The defendant introduced no evidence, and the court submitted the case to the jury as presenting the two questions: *First*, was the emergency in which the driver found himself such as to render it proper for him to call for outside aid, and, if so, *second*, was he negligent in placing so young a boy on the platform above described to perform the service which was required of him ?   The court also instructed the jury that if the emergency did call for the employment of temporary help, then the driver, in employing such help, took the place of the master and his negligence was that of the defendant.   Under this instruction the plaintiff was entitled to a verdict if the two questions submitted were answered in the affirmative, and such was the verdict of the jury.   Thereupon the defendant moved for a new trial upon the minutes, and the court granted the motion on the ground that it was error to deny the motion for a nonsuit.

While we do not find the question altogether free from difficulty, we are of the opinion that the learned court was right at first ; that the motion for a nonsuit was properly denied ; that the case was properly submitted to the jury, and that the motion for a new trial ought not to have been granted.

It is very clear that the plaintiff was not a volunteer, but a temporary servant of the defendant, employed as such by one who had undoubted authority to employ assistance when the emergency required. Whether such was the emergency in this case was a question properly submitted to the jury, but if the answer to it had been in the negative, the verdict might properly have been set aside as contrary to the evidence. It is matter of demonstration that this car could not have been drawn backward, with safety to the passengers and property of the defendant, with only one man to manage both the horse at one end and the brake at the other end of the car. Having such authority from the necessity of the case, the driver in exercising it stood in the place of the master, and charged the latter with the consequences to others of any abuse of discretion or neglect of duty in its exercise. (Beach on Contributory Negligence, § 342; Thompson on Negligence, 1040; *Bradley* v. *N. Y. C., etc., R. R. Co.,* 62 N. Y. 99.)

Such being the effect of the emergency mentioned, and its existence in this case being established by the verdict, the second question submitted to the jury became pertinent and the answer to it decisive of the action. We think the question was properly submitted to the jury and that the verdict in that respect was well supported by the evidence. The little platform on which the boy was placed was to some extent a dangerous place for anybody to stand upon while the car was in motion backwards, for the reason that the whole structure, including the steps, was within the line of the rails, so that if he slipped or stumbled, or by any jar or shock was thrown from the platform, some portion of his body or limbs was likely to come in front of the wheels. The other boys, who seem to have escaped without injury, must have leaped clear from the end of the car. It was the duty of the driver — who, acting in the place of the master, employed the plaintiff — to give him a reasonably safe place in which to render the service required of him; and we think it was a question for the jury whether the place in which he was put was a reasonably safe place for a boy of his youth and inexperience.

But there is another aspect of the case in which, as we think, the negligence of the driver was still more apparent. He drove the

other boys off the car while it was in motion, past the place where the plaintiff stood, at the imminent hazard of jostling him from his footing on the narrow platform; and this is precisely what did happen. It might have been avoided by stopping the car when the boys were ordered off. If what he did in this respect was negligence on the part of the driver, its effect to charge the defendant can be avoided only on the ground which is contended for by the defendant, viz., that the driver no longer stood in the place of the master, and that his negligence was that of a fellow-servant with the plaintiff. But this ground we do not regard as tenable. We think that, acting in the place of the master when he employed the plaintiff for the temporary service, the driver continued to hold that relation to the master during the continuance of that temporary employment, and that the defendant is chargeable with the driver's negligence while that relation continued to exist.

It is undoubtedly true that the plaintiff was *sui juris*, and, therefore, chargeable with any negligence on his part which contributed to occasion the accident in question, but it is equally true that, in judging the acts of such a boy, the law does not hold him to the same standard of prudence and good judgment as if he was a man of mature years and experience. But the doctrine of contributory negligence has no application in this case, except to charge the plaintiff — to an extent limited by his youth and inexperience — with an assumption of whatever risks of the employment were apparent to him when he entered upon it, and clearly those risks did not include the danger of being jostled from the platform by a crowd of boys, driven from the car while it was in motion.

On the whole case we are of the opinion that the motion for a nonsuit was properly denied ; that it was proper to submit the case to the jury; that the verdict should not have been set aside, and that the order granting a new trial should be reversed.

LEWIS and HAIGHT, JJ., concurred.

Order granting a new trial appealed from reversed, with costs, and judgment ordered for the plaintiff on the verdict.