WILLIAM H. BRADLEY, Respondent, *v.* THE NEW YORK
CENTRAL RAILROAD COMPANY, Appellant.

Defendant's foreman or track-master, whose duty it was to keep its tracks clear from snow, and who was accustomed to do so with men hired temporarily for that purpose, employed plaintiff with his team to scrape the tracks. The day was very stormy; plaintiff was the only man out with a team; he was ignorant of the time of the passage of trains, and unused to the work; he objected to the employment upon these grounds; the foreman agreed to advise him of the coming of trains; and thereupon plaintiff consented. While employed in the work he was struck by a train, of whose coming the foreman failed to advise him. In an action to recover for the injury, *held*, that it was within the general authority of the foreman to use the necessary and proper means to have the work done; that as the stipulation to protect plaintiff from danger was not unreasonable, as he was the only one the foreman could procure to do the work, and him only upon those terms, the foreman was authorized to make the stipulation; that plaintiff had a right to rely upon it, and upon the greater knowledge and judgment of the foreman, and was not required to be on the look-out or to listen for approaching

trains; and that for a failure to perform the agreementt defendant was liable.

(Argued April 23, 1875; decided May 25, 1875.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict.

This action was brought to recover damages sustained by plaintiff for injuries received by him under the following circumstances:

In January, 1867, plaintiff, a farmer, was engaged in drawing wood to defendant's depot at Verona; a heavy snow storm was prevailing, and the tracks were incumbered with snow. A foreman or track-master of defendant whose duty it was to keep its tracks clear at that station, and who was in the habit of employing and paying men temporarily when needed for that purpose, requested plaintiff to take his team and scrape the tracks; as plaintiff's evidence tended to show, no other teams were out; that the foreman stated for this reason it would be an accommodation if plaintiff would do the work; that plaintiff objected, that he did not know how to do the work, and did not know the times of the trains; the foreman replied that he would let him know the time when trains would come, and would furnish a man to hold the scraper, whereupon plaintiff consented and went to work. Numerous trains were passing both ways; the snow deadened the sound. While engaged in his work an overdue train, of the coming of which no notice had been given plaintiff by the foreman or any other person, and which approached rapidly without plaintiff's seeing or hearing it, struck him and his team, injuring him severely and causing the death of the team.

Defendant's counsel moved for a non-suit upon the grounds that the negligence, if any, was that of the co-employes of plaintiff, for which defendant was not liable. That plaintiff was guilty of negligence in not looking, and that the agreement, if made, to notify plaintiff of the approach of trains,

was not binding upon defendant. The court denied the motion and defendant's counsel excepted.

The court charged, in substance, that if the jury found the agreement was made as claimed by plaintiff, defendant was bound thereby, and was liable for a neglect to give notice, if, in consequence the accident happened without negligence on plaintiff's part, and that the latter was excused thereby from watching for passing trains, but if he heard danger was bound to get out of the way. To which charge defendant's counsel excepted.

*John D. Kernan* for the appellant. This action could not be maintained as an action for negligence, because the negligence was that of the co-employes of plaintiff. (*Wright* v. *N. Y. C. R. R. Co.*, 25 N. Y., 562.) Plaintiff was guilty of negligence which contributed to the injury, and he cannot, therefore, recover. (*Ernst* v. *H. R. R. R. Co.*, 45 N. Y., 9; *Gonzales* v. *N. Y. C. R. R. Co.*, 38 id., 440; *Wilcox* v. *R. and W. R. R. Co.*, 39 id., 358; *Baxter* v. *T. and B. R. R. Co.*, 41 id., 502; *Davis* v. *N. Y. C. and H. R. R. R. Co.*, 47 id., 400; *Havens* v. *Erie R. Co.*, 41 id., 296.)

*John F. Seymour* for the respondent. The motion for a nonsuit was properly denied. (S. & R. on Neg. [2d ed.], § 102, and note 1; *Wood* v. *A. R. R. R. Co.*, 4 Seld., 166, 167; *Flike* v. *B. and A. R. R. Co.*, 53 N. Y., 553; *Newson* v. *N. Y. C. R. R. Co.*, 29 id., 383.) The agreement of the track-master with plaintiff was the agreement of defendant, he being its agent. (*Flike* v. *B. and A. R. R. Co.*, 53 N. Y., 549; *Eaton* v. *Erie R. Co.*, 51 N. Y., 544; *Mackay* v. *N. Y. C. R. R. Co.*, 35 id., 75; *Kissenger* v. *N. Y. and N. H. R. R. Co.*, 56 id., 543.) The question of contributory negligence on the part of plaintiff was one for the jury. (47 N. Y., 400; 51 id., 251; *Ernst* v. *H. R. R. R. Co.*, 35 id., 26–29, 333.)

FOLGER, J. There can be no doubt, that had the plaintiff been a traveler upon the public highway, whose course took

him on this occasion across the track of the defendant's road, he would with like lack of look-out for a coming train have been so chargeable with contributory negligence, that he could not have maintained an action for the injury which he received. There is little doubt, that had he been a servant of the defendants under ordinary circumstances, he would have been like chargeable; nor is there doubt, that had there been other facts added, to those which were shown and which in the case of a traveler or an ordinary servant were probably enough to make out contributory negligence, but that there would have been the same result. Thus if he had seen or heard the train approaching, or had been warned of its coming in time to avoid it, and had made no attempt thereto, or if he had been under the duty to have watched for it, he would have been culpably negligent; so that the case comes to the questions: 1st. Whether the contract between him and the defendant's foreman was, that the latter should "let him know the time the trains would come." 2d. Whether the foreman had the authority to make that contract. And, 3d. Whether if made with authority it excused him from looking and listening for the coming of a train. 1st. The jury have found that there was such a contract; and on testimony which, though contradicted, will sustain the finding. 2d. As to the authority to make it; it is first to be observed, that there was no written or indeed formal parol appointment of the foreman, by which his duties and powers were specifically or distinctly marked out. The foreman's appointment to his place was by parol in a general way, and somewhat of the extent of his authority is to be got at by implication, from the powers confessedly given, and from the adoption or recognition of previous acts, and from the nature and extent of his usual employment. The authority of an agent is always construed to include all the necessary and usual means of executing his duty to his principal with effect. The foreman in this case was charged with the duty of clearing the track of snow, and it was usual for him to do this with men hired by him temporarily for the purpose and paid ultimately by the defendant. It is to be

inferred, that at the place of the accident this was effected by the use of a scraper drawn by horses and handled by men. It is not to be doubted, but that he had power to employ for the company a man and his horses for the work, nor but that he had power to engage for the company that the man employed should receive a reasonable compensation for his and their labor, nor but that he had power to engage for the company, to any other extent rendered necessary and proper under the circumstances of the case, to effect with reasonable speed and completeness the primary object of keeping the track in fit condition for the movement of trains, with authority to hire men and teams and to pay for their services. It cannot be doubted but that he had authority to suit the rate of compensation to the exigencies at the time of hiring, and that whatever rate be engaged for, which was reasonable, necessary and proper, under the circumstances of the case, the company would be bound to pay. It cannot be different, where the necessities of the occasion required of him an engagement, enhanced in degree by an exchange of service, instead of by an increase in moneyed compensation. The transaction was in mid-winter, it was on a stormy day, the snow was falling, and flying before the wind, the place of labor was directly upon the tracks where trains passed frequently, the plaintiff was ignorant of the times for the passage of them, he was unused to the labor requested of him, and for that reason unwilling to undertake it, he was the only man who was out that day with a team, and hence any terms not unreasonable which he fixed for his labor were to be complied with. It was not unreasonable under these circumstances, that he should be paid in money the value of his services, and that he should be relieved of his apprehension of danger from the trains, and of the care of watching for them. They were the only terms upon which any labor of man and beast could be got. This was an agreement which the defendant could have made with him, and one which it would not have been unnatural or unreasonable for him to stipulate for, nor for it to accede to. It was one which any agent of defendant, duly authorized thereto, might

reasonably accede to.    As the necessity for the work to be done
existed, as it was a work which it was the duty of the foreman to
have done, as the plaintiff was the only one whom he could pro-
cure to do it, it seems that it was an incident, to his duty  to
have the work done and  to  his  general authority to  use  the
necessary and proper means therefor, to  make the agreement
with the plaintiff not only for  the  compensation for his labor,
but for his protection from danger.   It is quite apparent from
the  facts  which  have  been  stated,  that  there  was need for
being on the lookout for  coming  trains,  and  that the care of
being on the lookout would interfere with the steady and con-
stant progress of the work  undertaken ;  it was not unreason-
able then for the  foreman  to  take  upon  himself the duty of
warning the plaintiff of  the  coming  of  the trains, for which
from his experience upon  the  track and his knowledge of the
time-table, and of all the usual signs of  approach and passage
of trains, he was much the better fitted ;  nor was it unreason-
able for the plaintiff  to rely upon the greater  knowledge and
judgment of the foreman in this respect, and upon his present
ability to do it, by reason of his freedom from other occupation.
It seems to me, that the engagement of  the foreman with the
plaintiff was, from the necessity for it and from its reasonable-
ness, one which was within the scope of his general authority,
as a natural means of fulfilling the important duty with which
he was charged.   3d.  As the engagement was binding upon the
defendant, I think that the plaintiff had a right to rely upon it,
and that he was not required by his duty to the defendant to
be on the lookout for the coming of their trains.   So the con-
tract of the defendant is to carry a passenger safely to his des-
tination on its line, and he need not inspect before entering its
car, whether it is in good state for the journey.   He has their
promise that it shall be so, and upon  that he  may rest until
he in fact  perceives defect.   The  plaintiff was in the same
position.   He  had  engaged with  the  defendant for  another
to look and to listen for him, who was  better  fitted  for  the
task, and he had a right to go on without  apprehension with
the labor he had bargained to do.    Had he seen or heard or

been told of a train coming, it would have been his duty to have tried to avoid it, but it was not his duty to look and listen for it.

These views lead to an affirmance of the judgment with costs.

All concur.

Judgment affirmed.