Mary Jane Hussey, as Administratrix, etc., Respondent, *v.* John J. Coger, Appellant.

In an action by a servant, to recover damages for an injury received in the course of his employment, it appeared that defendant entered into a contract with the owners of an ocean steamer to repair her hold. The defendant did not personally supervise the work, but employed a superintendent, a fit and competent person, a skillful and experienced workman, who had general charge of the work and authority to procure the materials and to engage all the workmen necessary for its performance. H., plaintiff's intestate, was employed by this superintendent. At the time of the accident he was at work in the hold of the vessel. It being necessary to uncover the hatchway on the main deck, the superintendent directed a foreman employed in the hold to send up men for that purpose. The hatches were heavy, the work of removing them was considered dangerous, and two men were invariably employed in its performance. Two men were sent up, and another employe also approached to assist, when near the hatch the superintendent directed one of them to remove it; he lifted one end and pulled the other from its resting place, and either because neither of the others had hold, or if they did, let go, it was wrested from his hands and fell through into the hold, striking H. and inflicting the injury complained of. *Held,* that plaintiff was not entitled to recover; that defendant having furnished suitable and sufficient help and materials to do the work, had done all that was required of him, and if there was negligence, the accident was the fault of his servants, that while the superintendent, so far as this action is concerned, might be regarded as standing in the place of the master to the persons employed on the work, he was still a servant, and in respect to such work as properly belonged to a servant to do, as the work in question did, while performing it, he discharged the duty of a servant for whose negligence and carelessness, if any, or of the other employes, the master was not responsible to co-servants.

A master is not chargeable because of the designation of a place for work, made dangerous only by the carelessness and neglect of fellow-servants, or for the negligent manner in which they use the tools or materials furnished for their work.

(Argued February 1, 1889; decided March 5, 1889.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 13, 1887, which affirmed a judgment in

favor of plaintiff, entered upon a verdict. (Reported below, 39 Hun, 639.)

The nature of the action and the facts are sufficiently stated in the opinion.

*Charles W. Dayton* for appellant.　The superintendent's acts were done in the range of the common employment, for which defendant is not liable. (*McCosker* v. *L. I. R. R. Co.*, 84 N. Y. 77 ; *Laughlin* v. *State N. Y.*, 105 id. 159 ; *Neubauer* v. *N. Y., L. E. & W. R. R. Co.*, 101 id. 607 ; *Crispin* v. *Babbitt*, 81 id. 561.)　Defendant furnished sufficient, skillful and competent fellow-workmen, and the injuries to plaintiff's intestate were due to the negligence of a co-servant, for which the defendant is not liable. (*Neubauer* v. *N. Y., L. E. & W. R. R. Co.*, 101 N. Y. 607 ; *Crispin* v. *Babbitt*, 81 id. 516.)

*Frank E. Blackwell* for respondent.　The relations of Gray to the defendant were of such a character that the defendant should be held responsible for his negligence. (*Pantzar* v. *Tilly Foster Mining Co.*, 99 N. Y., 373 ; *Corcoran* v. *Holbrook*, 59 id. 517.)　The omission of Gray to provide enough men to remove the hatch was an omission of the defendant, for which he is responsible. (*Flike* v. *B. & A. R. R. Co.*, 53 N. Y. 549 ; *Booth* v. *B. & A. R. R. Co.*, 73 id. 38 ; *Reiner* v. *Heuvelman*, 8 Week. Dig. 17 ; *Slater* v. *Jewett*, 85 N. Y. 72, 73 ; *Sheehan* v. *N. Y. C. & H. R. R. R. Co.*, 91 id. 333, 334, 335.)　The omission of Gray to give warning, or cause it to be given, was an omission of the defendant, for which he is responsible. (*Sheehan* v. *N. Y. C. & H. R R. R. Co.*, 91. N. Y. 332, 335 ; *Corcoran* v. *Holbrook*, 59 id. 517, 520 ; *Dana* v. *N. Y. C. & H. R. R. R. Co.*, 92 id. 639.)

RUGER, Ch. J.　This action was insitituted by a servant of the defendant to recover damages for an injury received in the course of his employment.　After a verdict the servant died and the action was revived by his administratrix, who was substituted as plaintiff to defend an appeal.　While there was much controversy on the trial as to some of the collateral

facts of the case, there was none as to the controlling circumstances which, in our judgment, determine the non-liability of the defendant. We are of the opinion that there was no evidence upon which a charge of negligence can justly be imputed to the defendant. The claim of liability is based upon the alleged negligence of the defendant in the performance of some duty which he, as master, owed to those in his employ, and which resulted in the accident from which the servant received his injury. The defendant was a carpenter and contractor engaged in the business of altering and repairing the interior of vessels, lying in the port of New York, for whosoever might need his services. He had entered into contract with the owners to make repairs upon the Wyoming, an ocean steamer, employed, among other things, in the transportation of fresh meat, and needing alterations in its hold to accommodate the traffic in which she was engaged. The defendant had employed for the performance of the work a superintendent, who had general charge of the job, and authority to engage all workmen under him, necessary to perform the contract. The plaintiff's intestate was a ship-joiner, and was one of the men so employed. The defendant exercised no personal supervision over the work, but devolved its whole management and control upon the superintendent, who was authorized to employ and discharge workmen; to regulate and direct the manner of their work; to provide the means and appliances necessary to its prosecution, and determine the time and place of its performance. The superintendent was employed by the master as his servant; but was delegated with the discharge of all those duties which, in the conduct of such work, rested upon the master to perform in respect to the person employed thereon. So far as this action is concerned, he may, therefore, be regarded as standing in the place of master to the person employed in the work. (*Corcoran* v. *Holbrook*, 59 N. Y. 520; *Pantzar* v. *Tilly Foster Mining Co.*, 99. N. Y. 373.)

It is not, however, every act of a superintendent for which a master is liable, for, notwithstanding his general supervisory

power he is still a servant, and, in respect to such work as properly belongs to a servant to do, is, while performing it, discharging the duty of a servant, for whose negligence and carelessness the master is not responsible to co-servants. (*Crispin* v. *Babbitt*, 81 N. Y. 516.) It was said in the *Crispin Case* that "the liability of the master does not depend upon the grade or rank of the employe whose negligence causes the injury. A superintendent of a factory, although having power to employ men, or represent the master in other respects, is, in the management of the machinery, a fellow-servant of the other operatives.  *  *  *   The liability of the master is thus made to depend upon the character of the act, in the performance of which the injury arises, without regard to the rank of the employe performing it. If it is one pertaining to the duty the master owes to his servants, he is responsible to them for the manner of its performance. The converse of the proposition necessarily follows. If the act is one which pertains only to the duty of an operative, the employe performing it is a mere servant, and the master, although liable to strangers, is not liable to a fellow-servant for its improper performance." In that case, while the plaintiff was engaged in lifting the fly-wheel of an engine off its center, the superintendent carelessly let the steam on and started the wheel, throwing the plaintiff on to the gearing-wheels, and thus occasioned the injuries complained of.

There is no question in this case but that the superintendent employed was a fit and competent person to have charge of the work to be done; or but that he was a skillful and experienced workman, and the sole question in the case is whether the special work in which he was engaged at the time of the accident belonged to the class which pertained to the duty of a master to perform or not. In considering this question it is not necessary to limit or restrict the rules defining the general duties and obligations of masters, engaged in mechanical employments, to their servants, for under the broadest definition laid down in the authorities, we think the respondent fails

to bring this case within the rule imposing liability upon masters. The case of *Pantzar* v. *The Tilly Foster Mining Company* (*supra*) is referred to by the respondent as sustaining the recovery and the questions may, therefore, be tested by the rule there laid down, without doing injustice to the plaintiff. It was there said that " the master owes the duty to his servant of furnishing adequate and suitable tools and implements for his use, a safe and proper place in which to prosecute his work, and, when they are needed, the employment of skillful and competent workmen to direct his labor and assist in the performance of his duties."

In that case the servant had been assigned to labor under an overhanging ledge in a mine, which had become disintegrated and cracked, to the knowledge of the master, and threatened to fall upon and injure those working beneath it. We held that the master was charged with the duty of exercising care and prudence in the protection of his servants from the known and inherent dangers of the situation, and, having failed to perform that duty, was liable to his servants for an injury arising from an omission to do so. The proof in this case does not show that the master omitted the performance of any such duty. He had provided a skilled and competent man to superintend and direct the work; a sufficient force, with all necessary and proper means and appliances, to perform it, and a safe place, free from any inherent dangers, in which to carry it on. He was not chargeable with the consequences of a place for work, made dangerous only by the carelessness and neglect of fellow-servants, or for the negligent manner in which they used the tools or materials furnished them for their work.

The plaintiff's intestate, at the time of the accident, was engaged in the hold of the vessel, repairing a bulk-head situated near the hatchway. Three decks extended above him, having corresponding openings, constituting hatchways, and were ordinarily covered by hatches; but, when uncovered, presented an open space some twelve or fifteen feet square, reaching from the hold, where the plaintiff's intestate was

engaged, through all of the decks to the spar deck, some twenty-five feet above him.  This vessel was constructed in the usual and ordinary mode of such steamers, and there was nothing about the arrangement of the hatchways, their appliances, or the various decks of the vessel, which presented any danger, if used in their usual and customary manner, to those employed about them.  Upon the occasion in question, the superintendent stood on the spar deck, near the hatchway, and had occasion to cause a water-tank to be let down from the main deck to the hold.  In order to do this it was necessary to uncover the hatchway on the main deck.  He directed the foreman of the men in the hold to send up assistants to do this work, and two men, viz., Holbrook and Torrey, were sent on this service.  The men usually worked in pairs, and Torrey was Holbrook's assistant.  These hatches were quite heavy, and the work of removing them was considered dangerous, and two men were invariably employed in its performance.  The hatches consisted of thick plank about six feet long and two and a half broad, and having holes cut in the corners at the respective ends diagonally opposite, to enable the men handling them to secure a firm hold.  When Holbrook and Torrey arrived at the hatchway they advanced on opposite sides towards it, and Rouse, another employe, had also approached it on the side opposite Holbrook in a position to assist him, when the superintendent called out saying : " Holbrook, take off that hatch."  Holbrook thereupon seized one end of the hatch, and, supposing either Rouse or Torrey held the other end, lifted and pulled it from its resting place. Torrey and Rouse, each waiting for the other, did not, in fact, get hold of the hatch, or, if they did, they let go and it fell through the hatchway, twisting itself by its weight out of Holbrook's hands and, after striking the steerage deck, bounded off and fell into the hold, striking the plaintiff's intestate on the leg, breaking it in several places.  It appeared that the decedent left the place where he was at work and was comparatively safe, and had advanced under the hatchway to obtain some nails, to use in his work, from a keg

placed there by some one, but by whom does not appear. While thus engaged he was struck by the hatch. There is no reasonable ground for claiming that Gray, by calling upon Holbrook to remove the hatches, intended that he should do so alone, or to exclude others, whom he had called there expressly to assist in the work, from co-operating with him. Holbrook and Torrey each understood that they were both required to remove the hatches, and would have co-operated but for the fortuitous presence of Rouse in the place where he stood. It was a usual and customary practice for men engaged in the work of removing hatches on shipboard to give notice to persons below by calling out to them to stand from under, or similar words, importing a caution to such persons. This custom was known to all of the persons engaged in removing the hatches, and, as testified to by several witnesses in various parts of the vessel, was complied with on this occasion. Other witnesses, however, among whom was plaintiff's intestate, testified that they did not hear the caution. Assuming that this evidence presented a question of fact for the jury, and that it might properly find that no signal was given, yet the duty of giving the caution necessarily belonged to those engaged in executing the work, and not to the master. It pertained purely to the mode of execution, and rested upon those who were engaged in its performance and were well informed of the customary usage in respect thereto. It was no part of the duty of the master to remove hatches or direct the particular mode of doing so, any more than to direct workmen in the use of the tools with which they performed their work. There were customary and established modes of performing such services, and each employe was expected to do his work in the manner and style to which he was accustomed, without special directions in respect thereto. It was entirely immaterial whether the superintendent undertook to perform the work of removing hatches or ordered it to be done by others; he was, in either case, engaged in performing the duty of a workman. The master had furnished abundant help to do the work, and had done all

that was required of him, and it was the fault of the servants that a sufficient number did not co-operate to perform it safely, or do it in the manner prescribed by custom. It would be extending the liability of a master beyond any established rule, to require him to oversee and supervise the executive detail of mechanical work carried on under his employment, and there is no rule of law which authorizes it. The risks arising to employes from the negligence and carelessness of fellow-workmen are incident to the service in all mechanical employments, and must be borne by the servant, and even with this limitation the field of the master's liability is sufficiently broad to impose upon him most onerous obligations in the conduct of industrial enterprises. He is not the insurer of the lives and safety of those in his employ, and after he has performed the duties which the law enjoins upon him, is exempt from liability for injuries arising from accidents occurring in the ordinary and usual mode of prosecuting work.

The judgments of the courts below should be reversed and a new trial ordered, with costs to abide the event.

All concur.

Judgments reversed.