is nothing, therefore, in the point now for the first time made, that Fischer's declarations were incompetent. The evidence of his admission, testified to by three witnesses, is sufficient basis for the verdict. There was also the testimony of the witness Brown that the man in question was employed by the defendant; and the defendant himself, although he said the man was not in his employ, admitted that "it was the duty of this man referred to to take care of the horses; that is, to put them in the shed and bring them out again." He was thus, according to the defendant's own account, performing services for him at the time of the accident. The evidence on this head is ample to support the verdict.

The evidence of the shedman's negligence is given by the plaintiff. There was another vehicle in front of the plaintiff's horse and wagon. This vehicle was backed down so that its wheels struck the plaintiff's horse. The latter was thereby startled and became unruly. The plaintiff testifies that the shedman, "when he saw the other horse back, stood perfectly still, and made no effort whatever to get out of the way." It was to be expected that the horse would be frightened if the wheels should strike him. And the jury had a right to find that the shedman was negligent in not attempting, while the backing was going on, to remove the plaintiff's horse out of harm's way. The negligence was in making no effort to avert the collision, and it was not cured by the shedman's subsequent effort to prevent the horse's escape. This evidence is absolutely uncontradicted, and it is reinforced by the defendant's failure to call the shedman as a witness, or to explain in any way why this was not done. Indeed, the case was tried mainly upon the question first considered, and the question of the shedman's negligence was not specifically raised. After moving to dismiss upon the first ground, the learned counsel for the defendant did add, "There is no proof of our negligence." But this amounted to no more than a continuous disavowal of the shedman's agency. It was the same as saying, "We move to dismiss upon the ground that there is no proof that the shedman was in our employ, and consequently there is no proof of our negligence."

The judgment and the order denying the motion for a new trial should be affirmed, with costs. All concur.

---

FLOETTL v. THIRD AVE. R. CO. et al.

(Supreme Court, Appellate Division, First Department. November 20, 1896.)

1. NEGLIGENCE—MASTER AND SERVANT.
    A street-railroad company is not chargeable with negligence where an employé of an independent contractor, while in a trench under the track, repairing it, was injured by a passing car in charge of railroad employés who did not know that any one was in the trench.

2. MASTER AND SERVANT—SAFE PLACE TO WORK—ASSUMPTION OF RISK.
    A master is liable for injuries received by his servant, while working in a place which both of them know is dangerous under certain conditions, where the servant goes in, relying on the master's assurance that such condition will not arise.

Appeal from trial term, New York county.

Action by John Floettl against the Third Avenue Railroad Company and the Jonson Engineering & Foundry Company for personal injuries. The complaint was dismissed, and plaintiff appeals. Affirmed as to one defendant. Reversed as to the other.

Argued before VAN BRUNT, P. J., and BARRETT, WILLIAMS, PATTERSON, and O'BRIEN, JJ.

Leopold Leo, for appellant.

Henry L. Scheuerman, for respondent Third Ave. R. Co.

John Notman, for respondent Jonson Engineering & Foundry Co.

PATTERSON, J. This action was brought to recover damages for injuries sustained by the plaintiff, which injuries, it is alleged, resulted from the negligence of both the defendants. He now appeals from judgment entered upon a dismissal of his complaint at the trial.

The Third Avenue Railroad Company is a corporation operating a line of street-railway cars, moved by cable power, in the city of New York, and the defendant the Jonson Engineering & Foundry Company is a manufacturing corporation engaged in the business of making and putting in place appliances or apparatus to move cable cars, such as were used by the railroad company. On the 17th of March, 1894, the plaintiff was in the employment of the defendant the Jonson Company, and had been in such employment for some months preceding that date. On the day named, the Jonson Company, by its employés or operatives, was, as an independent contractor, doing certain work for the Third Avenue Railroad Company about and under its track, and this plaintiff was one of such operatives or hands engaged in doing some of that work, at a point in Park Row, in the city of New York, opposite the Times Newspaper Building. It appears that, at the place indicated, a trench or excavation had been dug under the bed of the easterly track of the railroad company, and that it was necessary for some of the employés of the Jonson Company to go into this hole or trench, and there do work in drilling holes through a yoke, part of the apparatus connected with the subterranean running equipment of the railroad company's system. This hole or trench is described as not being deeper than one foot from the level at which the rails rested; that is, below the bottom of the rails. To get in this trench, those who worked in it first laid themselves on their backs, "got hold of the rail, and then pulled themselves, in that way, under the rail, and towards the cable under the track, and then the work that they had to do was at the yoke." This plaintiff, having entered in that way, worked at a yoke on the east side, and had his face turned towards the east when the accident happened. It appears that, early in the morning of the day on which the accident occurred, the plaintiff had been at work in this trench; that he came out, and remained out for about an hour and a half, when the foreman of the Jonson Company directed him

to go down again. To this the plaintiff objected, saying that he could not work there, that he was too large a man for it, and had not room to work. Whereupon the foreman said to him: "You have to go in there. The work has to be finished by 5 o'clock. The cars will stop until 5 o'clock." The plaintiff then said: "What will I do in there if it does come?" To which the foreman replied: "The car will stop. Go down." It was testified that the plaintiff was in the hole only half an hour before he was hurt, and the accident occurred about 15 or 20 minutes past 4 o'clock in the morning. It was yet dark. The plaintiff and those working with him were lifting up shafting upon the yoke when Mr. Jonson cried out: "Look out, Floettl and Wein; the car is coming!" It did come, and stopped over the trench. The cable began to move, and its vibration annoyed the plaintiff, and he instinctively raised his hands and caught the rail, the car started, and a wheel of the car passed over his fingers, and cut them off. The car came from the south, moved by a slow cable, as it came along Park Row, up to the point at which the plaintiff was working. There it stopped immediately over the hole in which the plaintiff was at work. It remained stationary long enough to take up a speedier cable, to which it was to be attached at that point. The plaintiff grasped the rail between the front and rear wheels of the car, the motion was imparted to the car while the plaintiff was still grasping the rail, and the injury ensued in manner as stated,—the plaintiff's fingers being cut off by the rear wheel of the car. Upon that state of the proof, the learned judge at the trial dismissed the complaint, holding that the evidence was insufficient to show negligence on the part of either the railroad company or of the Jonson Company.

As affecting the railroad company, the disposition of the cause made by the learned judge was right. There was no negligence whatever on the part of that company, or any of its agents or servants, leading to the injuries suffered by the plaintiff. He was not an employé of the railroad company. That company owed him no further duty than such as it owed to any person lawfully in the street, or to any person working upon or under the tracks to the knowledge of its officers or servants. The foreman of the Jonson Company was in no sense or manner authorized by the railroad company to make any statements or give any assurance to the plaintiff connected with the operation of the railroad company's road or the running of its cars. It was doubtless bound to run those cars with regard to the safety of any one at work upon the apparatus connected with the running of its cars. The evidence is altogether insufficient to show that that was not done, or that the car was not carefully operated, or that the railroad company's servants in charge of the car were in any way remiss in any duty they owed to any person. The car reached the point at which it stopped to take up the speedier cable without injury to any one, and there is nothing to show that those operating the car had any knowledge that any one was in the trench, nor is it shown that the cable was negligently operated. The fingers of the plaintiff were cut off by the rear wheel of the car, the plaintiff's hand

grasping the rail between the front and rear wheels while the car was motionless. It is impossible to see how, without some evidence to show that the railroad company's servants knew, or ought to have known, that some one was in the trench, it can be made responsible for the starting of the car without giving warning. The testimony was entirely inadequate to make out a case of negligence against the railroad company, and the complaint with regard to it was, therefore, properly dismissed.

But, with reference to the defendant the Jonson Company, there was enough in the testimony to go to the jury on the plaintiff's contention that the company did not furnish to the plaintiff that protection to which he was entitled, in view of the assurance he had received from the foreman. This view does not result, in this case, from the application of the rule that an employer is bound to furnish to his servant a safe place in which to work. Where the danger is known to the employé, he has an opportunity to decline the service. If, under ordinary circumstances, and with full knowledge of the danger, he enters upon that service, he takes the risk of his employment, precisely in the same way he would take the risk of operating dangerous machinery, known to him to be dangerous. Hickey v. Taaffe, 105 N. Y. 26, 12 N. E. 286; Cahill v. Hilton, 106 N. Y. 512, 13 N. E. 339; Cullen v. Roofing Co., 114 N. Y. 45, 20 N. E. 831; Shields v. Railroad Co., 133 N. Y. 557, 30 N. E. 596. As was said in the case of McGovern v. Railroad Co., 123 N. Y. 287, 25 N. E. 374:

"If the servant puts himself in the way of dangerous machinery, with knowledge of its character, or places himself in the way of bodies moving in their accustomed orbit with irresistible force, and is thereby injured, it will generally be regarded as the result of his own carelessness; but, if he is engaged in a business which may be safely carried on according to the degree of care and caution used in prosecuting it, but by omission of such care may become hazardous to human life, it is the duty of those carrying on such business to adopt all reasonable precaution to avoid the occurrence of such danger by adopting the modes of conducting the business to the avoidance of the ascertainable dangers accompanying its exercise. In other words, it is the duty of the master, having control of the times, places, and conditions under which the servant has to labor, to guard him against probable danger in all cases in which that may be done by the exercise of reasonable caution."

That the place at which the plaintiff was put to work was one which might become dangerous is manifest, and the particular danger to which the plaintiff would be exposed was apprehended and anticipated by both the plaintiff and the person standing in the place of the master on the day and at the time the accident occurred. The testimony of the plaintiff and of the witness Wein is quite direct to the point of the reluctance of the plaintiff to enter into the trench, in view of the possibility of the cable being started and of the car running while he was working therein. It was known that, under such circumstances, that place would become dangerous, notwithstanding which the direction was given by the foreman to the plaintiff to go into the trench, and that direction the plaintiff would not obey until he received an assurance that he would be protected from what he apprehended to be the danger of complying with it. Upon his expressing his fears

and his reluctance, he received from the foreman that which was equivalent, under the circumstances, to an assurance that the conditions were or would be such that the apprehended peril would not occur. He was told that the work at the yoke must be completed by 5 o'clock and that cars would not run until 5 o'clock. In view of what was said between the plaintiff and the foreman, the only construction that can be given to the language of the foreman is that it was an assurance that the plaintiff would be exempt from the particular danger he apprehended, and from which it was obviously the duty of his employers to shield him. There is nothing in the testimony which countervails this view. The plaintiff did, in further conversation, ask the question, "What will I do in there if it does come?" referring to the car; to which the foreman responded: "The car will stop. Go down." This was but a reiteration, in substance, of what was said before; and, although the words "until 5 o'clock" were omitted in this second assurance, the plaintiff was justified in understanding that this remark related to the hour, and that no cars would traverse the track where he was working until 5 o'clock, which, as before remarked, was the hour at which the work was to be completed. That the car which injured the plaintiff did stop at 20 minutes past 4, but only long enough to take up another cable, and stop directly over the trench in which the plaintiff was working, cannot be adjudged to be a compliance with the assurance the plaintiff received.

We do not think this is a case in which it can be said that the plaintiff was coerced to enter the trench. He did not go into it in obedience to the command, but in reliance on the assurance given. Nor did he rely upon the better judgment of the master concerning the safety of the place in which he was to work. His own evidence excludes that consideration. But he relied, and had the right to rely, upon the promise of his superior, who was in charge of the work, that the place would be made safe under the conditions in which he was induced to work in it. That that was the assurance given, and binding upon the master, is quite clear in this case. It was not a mere promise or assertion or guaranty of a fellow servant. The nature of the work done, the relation of this foreman to that work, the control which he had over the Jonson Company's servants employed thereon, all show, prima facie, at least, that this foreman was in a place of responsibility, directing work which required skilled labor of a peculiar kind, in and about an apparatus somewhat complicated in its structure. And so the foreman was representing the master in and about that kind of work, the superintendence and direction of which, had the master been an individual, and not a corporation, might well have been assumed by the master himself. We think that there was an undertaking on the part of the Jonson Company that the cars would stop until 5 o'clock, and that the plaintiff was justified in relying upon it, and that the negligence of the Jonson Company was in making a statement, either untrue or not known to be true, and thereby inducing the plaintiff to enter the trench, or, having honestly made the statement, in not seeing to it that the car was not

permitted to come over the trench before 5 o'clock, and while the plaintiff was at work therein.

It is contended on the part of the Jonson Company that the plaintiff had warning that the car was coming, but, instead of keeping still, he put his hand on the rail, and thus caused the injury. The evidence is entirely insufficient to show that the plaintiff received any such warning as would have enabled him, intermediate the giving of the alleged notice and the time at which the car reached the trench, to come out of that trench, reference being had to the peculiar manner in which a person was obliged to enter and come out of the excavation; and it certainly cannot be said that, upon the testimony as it stands, the plaintiff is responsible for his own injury by putting up his hands, which act was done instinctively, in consequence of the vibration of the cable near his head,—it not being shown that he had any reason whatever to think that the car, having then stopped, would proceed in its transit before he could relax his grasp and change his position.

We think, therefore, the nonsuit as to the Jonson Company was erroneous. The judgment must be affirmed, with costs, as to the Third Avenue Railroad Company, and as to the Jonson Company reversed, with costs to the appellant to abide the event. All concur.