mittee of the citizens of the city of Auburn, and at the time fixed upon for their exhibition sent a man and a boy to Auburn to assist the committee in managing the display. The expenses of these two persons were paid by the committee, under whose directions and control they acted while in Auburn. A rocket which was discharged by the boy struck and injured one of the plaintiffs, and in an action against the general employer to recover damages for such injury, it was held that:

"The fact that the party to whose wrongful or negligent act an injury may be traced was at the time in the general employment and pay of another person does not necessarily make the latter the master, and responsible for his acts. The master is the person in whose business he is engaged at the time, and who has the right to control and direct his conduct."

When we come to apply the rule as it is thus stated to the present case, we are unable to see why it does not necessarily dispose of the question we have been considering; for, as has already been stated, the plaintiff, at the time he received his injury, was engaged in performing services for the defendant, who had the right, and did actually assume, to control his conduct. For any misconduct or inability to perform the service required of him the defendant could undoubtedly have discharged him, and returned him to his general employer. The defendant was, therefore, at that time the plaintiff's master, and as it was also the master of the person whose negligence caused the injury it follows that this person and the plaintiff were co-servants in the same common employment, and that no action lies against the defendant for the injury sustained by the plaintiff. Rozelle v. Rose, 3 App. Div. 132, 39 N. Y. Supp. 363. The judgment appealed from should therefore be affirmed.

Judgment affirmed, with costs. All concur.

---

(21 Misc. Rep. 10.)

### MULLANE v. HOUSTON, W. ST. & P. F. R. CO.

#### (Supreme Court, Appellate Term. July 29, 1897.)

1. MASTER AND SERVANT—FELLOW SERVANTS.
    The track master of a cable-road company, who has authority to hire men, and has sole charge of a squad of workingmen under him, represents the company, and is not a fellow servant of the workers under him.

2. SAME—DANGEROUS EMPLOYMENT.
    Plaintiff was ordered by the track master to go down into a manhole of the cable road and examine a grease trap. To his objection that the place was dangerous by reason of the cable, the track master replied that he would see the engineer, and that the cable would not start while plaintiff was down below, and again ordered him to descend. Plaintiff, relying on the track master's promise, went below, and, while there the cable started, inflicting injuries upon him. *Held*, that plaintiff properly relied on the track master's assurance of safety, and the company was liable for the injuries.

Appeal from city court of New York, general term.

Action by Patrick Mullane against the Houston, West Street & Pavonia Ferry Railroad Company. A judgment for plaintiff was affirmed by the general term (45 N. Y. Supp. 1039), and defendant appeals. Affirmed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

H. A. Robinson (J. T. Little and T. H. Lord, of counsel), for appellant.

M. P. O'Connor, for respondent.

McADAM, J. The action was to recover damages for personal injuries alleged to have been sustained by reason of the negligence of the defendant. It appears that prior to November 24, 1893, the plaintiff was employed by the defendant, through its track master, Mr. Greenwald, who had sole charge and control of the plaintiff and his co-workers. The apparatus upon which the plaintiff was put to work was called a "gypsy." It was located on Seventh avenue, about 30 feet south of Fifty-Ninth street; and two men worked upon it,— one on the surface of the street, and the other in a hole below. On the evening of November 24th, Greenwald came to the plaintiff and told him that in the early hours of the following morning the plaintiff should leave the gypsy on which he was then working, and go into another hole, about 30 feet further north, to examine a grease box. In this hole where the plaintiff was ordered to go there was machinery for the purpose of carrying and operating the cable. The plaintiff objected to entering the hole, saying to Greenwald that it was dangerous. Greenwald again told him to go down there, and that "he would see the engineer, and that the cable would not start" while the plaintiff was down. Greenwald thereafter went away for the purpose, as the plaintiff supposed, of giving the orders not to start the cable, according to his promise. The plaintiff acted on this belief, and, with a fellow workman named Fall, went down into the hole to carry out Greenwald's orders. When they entered the cable was not in motion, but while down there the machinery was put in motion and the cable started, inflicting the injuries of which the plaintiff complained. The injuries having been caused by Greenwald's failure to give proper notice to the engineer according to his promise, the plaintiff made out a case sufficient to go to the jury, under the principle decided in Floettl v. Railroad Co., 10 App. Div. 308, 41 N. Y. Supp. 792, in which the court (at page 314, 10 App. Div., and page 796, 41 N. Y. Supp.) said:

"We do not think this is a case in which it can be said that the plaintiff was coerced into the trench. He did not go into it in obedience to the command, but in reliance on the assurance given. Nor did he rely upon the better judgment of the master concerning the safety of the place in which he was to work. His own evidence excludes that consideration. But he relied, and had the right to rely, upon the promise of his superior, who was in charge of the work, that the place would be made safe under the conditions in which he was induced to work in it. That that was the assurance given and binding upon the master is quite clear in this case. It was not a mere promise or assertion or guaranty of a fellow servant. The nature of the work done, the relation of this foreman to that work, the control which he had over the Jonson Company's servants employed therein, all show, prima facie, at least, that this foreman was in a place of responsibility, directing work which required skilled labor, of a peculiar kind, in and about an apparatus somewhat complicated in its structure. And so the foreman was representing the master in and about that kind of work, the superintendence and direction of which, had the master been an individual and not a corporation, might well have been assumed by the master himself."

See, also, Pantzar v. Mining Co., 99 N. Y. 368, 2 N. E. 24; Rettig v. Transportation Co., 6 Misc. Rep. 328, 26 N. Y. Supp. 896, affirmed 144 N. Y. 715, 39 N. E. 859; Stuber v. McEntee, 142 N. Y. 200, 36 N. E. 878.

As the defendant was bound to furnish the plaintiff with a safe place in which to work, under the conditions in which he was induced to work in it, we think the plaintiff had the right to rely upon the assurance of Greenwald, and that, in giving it, Greenwald was performing a duty which the defendant owed to its servants, and not a mere detail of work as a fellow servant, for whose misconduct to a co-worker a master is not liable. Greenwald testified that:

"The rule is not to start the cable when any person is working outside [referring apparently to work in the holes], but, if the engineer is not notified to that effect, he takes it for granted that everything is supplied for him to start at any time."

The assurance was no doubt given with reference to this rule, with which Greenwald appears to have been familiar. The plaintiff had no official method of communicating with the defendant, except through its foreman, the track master, whose position was of sufficient importance to warrant the engineer, or those in control of the power house, in obeying his direction to observe the rule, and not start the machinery, that his assurance of safety given to the plaintiff might be made good. On the other hand, it is not so certain that the engineer would have heeded such a suggestion by one of the many laborers employed by the defendant, whose connection with the road is. as a rule, known only to their foreman. The case was fairly submitted to the jury by a charge to which no exception was taken, and the verdict, which was for $500, is moderate in amount.

Judgment affirmed, with costs. All concur.