## SCHOTT v. ONONDAGA COUNTY SAV. BANK.

(Supreme Court, Appellate Division, Fourth Department. March 21, 1900.)

1. MASTER AND SERVANT—INJURY TO SERVANT—FELLOW SERVANTS.
    One engaged as a laborer in the construction of a sewer, who descends into the trench, which has been properly constructed, and protected from ordinary dangers, and which is not an inherently dangerous place, and is injured while therein by another laborer, engaged on the same work, depositing the contents of the wheelbarrow on his head and shoulders, cannot recover damages against the principal for the injury, as the principal furnished a reasonably safe place in which to work, and the act

causing injury was the act of a fellow servant, for which the principal is not liable.

2. SAME—ASSURANCE OF FOREMAN—DETAILS OF WORK.

The fact that, on plaintiff objecting to descending into the trench, defendant's foreman assured him it was safe, and that he would stand and watch, did not render defendant liable, since the foreman's assurance was merely as to the details of the work, given in his individual capacity, and not for the principal.

Appeal from Onondaga county court.

Action for injuries by Andrew Schott against the Onondaga County Savings Bank. From a judgment for plaintiff, reversing a judgment of the municipal court of the city of Syracuse, defendant appeals. Reversed.

The defendant was engaged in constructing a sewer from its banking house in the city of Syracuse to a stream known as the "Onondaga Creek." The work was carried on under the superv'sion of a competent engineer, who was superintendent of the city water department, and the men were employed by one Spaulding, who gave his personal attention to the work as it progressed. A trench some 18 or 20 feet in depth had been opened, and a sewer pipe laid therein, after which the dirt and material from the sides of the trench were thrown in, and tramped down by a gang of men stationed in the trench for that purpose. When the earth nearest the trench had been shoveled in, that further back was brought up in wheelbarrows, and dumped in. The plaintiff was employed to work upon this sewer on the 26th day of May, 1898, and continued in such employment until the 16th day of June following. On the last-named day he was directed by one Eagan, who acted in the capacity of foreman, to get into the trench, and proceed with the work of filling up the same. The plaintiff, upon receiving such direction, remarked: "It is a pretty spookish place. It is a pretty deep hole. Somebody will get hurt there;" to which Eagan replied, "No, I will stand right here and watch." The plaintiff thereupon entered the trench, and in the course of a few moments another laborer dumped a wheelbarrow load of dirt and stones upon him, causing the injuries to his person for which this action is brought. The plaintiff had observed the work as it progressed, and was entirely familiar with all the dangers involved in the performance of the task assigned to him at the particular point where the accident occurred.

Argued before ADAMS, P. J.; and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Jerome L. Cheney, for appellant.
Andrew S. White, for respondent.

ADAMS, P. J. The direct cause of the plaintiff's injury—the depositing of the contents of a wheelbarrow upon his head and shoulders—was confessedly the act of a co-servant, which of itself did not, of course, create any liability upon the part of the common master. It is contended, however, that the injurious consequences of this act would have been averted had not the foreman, Eagan, been unmindful of his promise to protect the plaintiff while in the trench, and that, inasmuch as Eagan had undertaken to perform a duty which devolved upon the master, his omission of such duty was negligence for which the defendant is liable. Although the fact is not made to appear by any affirmative evidence, it may, for the purposes of this review, be assumed that Eagan neglected his self-imposed duty of watchfulness, and with this assumption in the case the plaintiff's proposition is fairly presented for our consideration. The general principles applicable to cases of this character, viz.

that it is the duty of the master to exercise reasonable care to provide his servant with a reasonably safe place in which to perform the work required of him, and that, having done this, the servant assumes any risk incident to the execution of the details of his work, are too well settled to admit of discussion. Hussey v. Coger, 112 N. Y. 614, 20 N. E. 556, 3 L. R. A. 559; Cullen v. Norton, 126 N. Y. 1, 26 N. E. 905; Kimmer v. Weber, 151 N. Y. 417, 45 N. E. 860; Perry v. Rogers, 157 N. Y. 251, 51 N. E. 1021. In this particular instance it is not claimed that the open trench was inherently a dangerous place in which to work. On the contrary, so far as appears, it had been properly constructed, and was securely protected from such dangers as might ordinarily be anticipated from the nature of the work and the character of the soil. To this extent, therefore, it must be assumed that the defendant had fulfilled the obligations resting upon it, and the inquiry which now presents itself is, what more was it called upon to do? Was it required to supervise the executive detail of the work as it progressed, and protect its employés from any and every hazard which its execution involved, including the negligent manner in which the work was being performed? Certainly no such rule obtains in this state, but, on the contrary, in the case of Hussey v. Coger, supra, it was said that the master is not "chargeable with the consequences of a place for work, made dangerous only by the carelessness and neglect of fellow servants, or for the negligent manner in which they used the tools and materials furnished them for their work." And in Perry v. Rogers, supra,—a case involving questions somewhat similar to those now under consideration,—we find this statement: "It has not been understood to be the rule in this state that in the performance of work of this character the master, after making the place, in the first instance, reasonably safe for the prosecution of the work, has any duty to perform other than in the furnishing of safe appliances and the employment of competent and skillful employés." With the rule of liability thus limited, it is made clear, as we think, that the plaintiff must fail in his action, for, as we have seen, the place furnshed by the master in which he was required to prosecute his work was of itself reasonably safe, and it was only made unsafe by the carelessness and neglect of his fellow servants. But it is said there was an express assurance of security from the very danger which produced the injury complained of. This is doubtless true; but we fail to see wherein that circumstance authorizes the plaintiff to invoke any other or different rule, for the fact remains that both he and Eagan, as well as the man with the wheelbarrow, were engaged in executing the details of the work. It was, therefore, no part of the defendant's duty to protect the plaintiff from the negligence of a fellow servant; and consequently, when Eagan undertook to warn and protect the plaintiff from a hazard of this character, he was acting in his individual capacity, and not as the alter ego of the defendant. Vitto v. Keogan, 15 App. Div. 329, 44 N. Y. Supp. 1; Golden v. Seighardt, 33 App. Div. 161, 53 N. Y. Supp. 460; Kiffin v. Wendt, 39 App. Div. 229, 51 N. Y. Supp. 109; McCarthy v. Washburn, 42 App. Div. 252, 58 N. Y. Supp. 1125.

The distinction between the act of the master and that of a servant is sometimes difficult of determination, and consequently each case in which the question arises is dependent in a large measure upon the peculiar circumstances of that particular case for its solution; but, generally speaking, it may be asserted that, when an assurance of safety is given respecting a danger from which the master is bound to protect his employé, the master is obligated by that assurance, whether it be given by himself or by some subordinate, who, for the time being, represents him; but, on the other hand, if the assurance relates to a mere detail of the work, the master is not bound, even though it be given by his alter ego; and we think the difficulty in this case has arisen from a failure to distinguish between these two classes of cases. In the elaborate opinion delivered by the court below, several decisions were cited in support of the conclusion there reached that this case is one which properly belongs to the first-mentioned class; but we believe it will be found, upon careful examination of these authorities, that in each instance the very distinction we have been endeavoring to make is most clearly drawn. Thus, in the case of Floettl v. Railroad Co., 10 App. Div. 308–314, 41 N. Y. Supp. 792, where a foreman occupied a place of responsibility, and was engaged in directing "work which required skilled labor of a peculiar kind in and about an apparatus somewhat complicated in its structure," it was declared that: "In view of what was said between the plaintiff and the foreman, the only construction that can be given to the language of the foreman is that it was an assurance that the plaintiff would be exempt from the particular danger he apprehended, and from which it was obviously the duty of his employer to shield him." So, in Mullane v. Railroad Co., 21 Misc. Rep. 10, 46 N. Y. Supp. 957, where a workman was directed by a track master to descend into a hole in a cable road, through which the cable ran, to adjust and examine some machinery, with the assurance that the engineer would be directed not to start the cable while the workman was thus engaged, but the track master failed to give proper directions, in consequence of which the cable was started, and the workman injured, it was held that the assurance of safety related to a duty which the master owed to his servants, and that "it was not a mere detail of work as a fellow servant, for whose conduct to a co-employé a master is not liable." Again, in Bradley v. Railroad Co., 62 N. Y. 99, the defendant's tracks in the vicinity of one of its stations had become obstructed by a heavy fall of snow. In this emergency the plaintiff and his team had been engaged by a track master, duly authorized, to aid in removing the snow, and upon the assurance that while thus engaged the party employing him would watch for and give due notice of approaching trains; and for a failure to make good this assurance the defendant was held liable. It is to be observed, however, that in hiring the plaintiff the track master was concededly acting within the scope of his authority, and that the promise made by him was a consideration which entered into the contract of hiring. The present case, in its main features, is not unlike that of Byrnes v. Railroad Co., 36 App.

Div. 355, 55 N. Y. Supp. 269, in which it was held that the engage-ment of one employé to warn and protect another who was working under his immediate supervision against a danger which was to be apprehended from the operations of a third person engaged in the same general business was the act of a co-servant, and not of the master; and we are persuaded that, within the principles which we deem applicable to this case, the same conclusion is inevitable. The judgment of the county court should therefore be reversed, and that of the municipal court affirmed.

Judgment of the county court reversed, and judgment of the municipal court affirmed, with costs. All concur.