ANDREW SCHOTT, Respondent, *v.* ONONDAGA COUNTY SAVINGS BANK, Appellant.

*Negligence — assurance of safety to a servant — when the master is obligated thereby — injury to an employee in a trench, on whom earth and stone are dumped — promise of the foreman to warn him.*

Where an assurance of safety is given respecting a danger from which the master is bound to protect his employee, the master is obligated by such assurance whether it be given by himself or a subordinate; but he is not bound by an assurance as to a mere detail of the work, although given by his *alter ego.*

While a trench was being filled with earth, dumped from wheelbarrows and tramped down by a gang of men stationed in the trench for that purpose, a workman who was directed to go into the trench by a foreman, stated to the latter, "It is a pretty spookish place; it is a pretty deep hole; somebody will get hurt there," to which the foreman replied, "No, I will stand right here and watch."

*Held,* that in undertaking to protect the workman, the foreman acted in his individual capacity and not as the *alter ego* of their common employer, and that the latter was not liable for injuries sustained by the workman in consequence of the foreman's failure to give timely warning that a wheelbarrow load of earth and stones was about to be dumped into the trench.

APPEAL by the defendant, the Onondaga County Savings Bank, from a judgment of the County Court of Onondaga county in favor of the plaintiff, entered in the office of the clerk of the county of Onondaga on the 20th day of May, 1899, reversing a judgment of the Municipal Court of the city of Syracuse in favor of the defendant.

The defendant was engaged in constructing a sewer from its banking house in the city of Syracuse to a stream known as the "Onondaga Creek." The work was carried on under the supervision of a competent engineer who was superintendent of the city water depart-

ment, and the men were employed by one Spaulding, who gave his personal attention to the work as it progressed. A trench some eighteen or twenty feet in depth had been opened and a sewer pipe laid therein, after which the dirt and material from the sides of the trench were thrown in and tramped down by a gang of men stationed in the trench for that purpose. When the earth nearest the trench had been shoveled in, that farther back was brought up in wheelbarrows and dumped in.

The plaintiff was employed to work upon this sewer on the 26th day of May, 1898, and continued in such employment until the sixteenth day of June following. On the last-named day he was directed by one Eagan, who acted in the capacity of foreman, to get into the trench and proceed with the work of filling up the same. The plaintiff upon receiving such direction remarked: "It is a pretty spookish place; it is a pretty deep hole; somebody will get hurt there," to which Eagan replied: "No, I will stand right here and watch."

The plaintiff thereupon entered the trench, and in the course of a few moments another laborer dumped a wheelbarrow load of dirt and stones upon him, causing the injuries to his person for which this action is brought.

The plaintiff had observed the work as it progressed, and was entirely familiar with all the dangers involved in the performance of the task assigned to him at the particular point where the accident occurred.

*Jerome L. Cheney*, for the appellant.

*Andrew S. White*, for the respondent.

ADAMS, P. J.:

The direct cause of the plaintiff's injury, the depositing of the contents of a wheelbarrow upon his head and shoulders, was confessedly the act of a coservant, which of itself did not, of course, create any liability upon the part of the common master. It is contended, however, that the injurious consequences of this act would have been averted had not the foreman, Eagan, been unmindful of his promise to protect the plaintiff while in the trench, and that, inasmuch as Eagan had undertaken to perform a duty which devolved upon the

master, his omission of such duty was negligence, for which the defendant is liable.

Although the fact is not made to appear by any affirmative evidence, it may, for the purposes of this review, be assumed that Eagan neglected his self-imposed duty of watchfulness, and with this assumption in the case the plaintiff's proposition is fairly presented for our consideration.

The general principles applicable to cases of this character, viz., that it is the duty of the master to exercise reasonable care to provide his servant with a reasonably safe place in which to perform the work required of him, and that, having done this, the servant assumes any risk incident to the execution of the details of his work, are too well settled to admit of discussion. (*Hussey* v. *Coger*, 112 N. Y. 614; *Cullen* v. *Norton*, 126 id. 1; *Kimmer* v. *Weber*, 151 id. 417; *Perry* v. *Rogers*, 157 id. 251.)

In this particular instance it is not claimed that the open trench was inherently a dangerous place in which to work. On the contrary, so far as appears, it had been properly constructed, and was securely protected from such dangers as might ordinarily be anticipated from the nature of the work and the character of the soil. To this extent, therefore, it must be assumed that the defendant had fulfilled the obligations resting upon it, and the inquiry which now presents itself is, what more was it called upon to do? Was it required to supervise the executive detail of the work as it progressed and protect its employees from any and every hazard which its execution involved, including the negligent manner in which the work was being performed? Certainly no such rule obtains in this State, but, on the contrary, in the case of *Hussey* v. *Coger* (*supra*), it was said that the master is not " chargeable with the consequences of a place for work, made dangerous only by the carelessness and neglect of fellow-servants, or for the negligent manner in which they used the tools or materials furnished them for their work."

And in *Perry* v. *Rogers* (*supra*), a case involving questions somewhat similar to those now under consideration, we find this statement: " It has not been understood to be the rule in this State that in the performance of work of this character the master, after making the place in the first instance reasonably safe for the prosecu-

tion of the work, *has any duty to perform* other than in the furnishing of safe appliances and the employment of competent and skillful employees."

With the rule of liability thus limited, it is made clear, as we think, that the plaintiff must fail in his action, for, as we have seen, the place furnished by the master in which he was required to prosecute his work was, of itself, reasonably safe, and it was only made unsafe by the carelessness and neglect of his fellow-servants.

But, it is said, there was an express assurance of security from the very danger which produced the injury complained of. This is doubtless true, but we fail to see wherein that circumstance authorizes the plaintiff to invoke any other or different rule, for the fact remains that both he and Eagan, as well as the man with the wheelbarrow, were engaged in executing the details of the work.

It was, therefore, no part of the defendant's duty to protect the plaintiff from the negligence of a fellow-servant, and consequently when Eagan undertook to warn and protect the plaintiff from a hazard of this character, he was acting in his individual capacity, and not as the *alter ego* of the defendant. ( *Vitto* v. *Keogan*, 15 App. Div. 329 ; *Golden* v. *Sieghardt*, 33 id. 161 ; *Kiffin* v. *Wendt*, 39 id. 229 ; *McCarthy* v. *Washburn*, 42 id. 252.)

The distinction between the act of the master and that of a servant is sometimes difficult of determination, and consequently each case in which the question arises is dependent, in a large measure, upon its own peculiar circumstances for its solution ; but, generally speaking, it may be asserted that when an assurance of safety is given respecting a danger from which the master is bound to protect his employee, the master is obligated by that assurance, whether it be given by himself or by some subordinate who, for the time being, represents him ; but, on the other hand, if the assurance relates to a mere detail of the work, the master is not bound, even though it be given by his *alter ego*, and we think the difficulty in this case has arisen from a failure to distinguish between these two classes of cases.

In the elaborate opinion delivered by the court below several decisions were cited in support of the conclusion there reached, that this case is one which properly belongs to the first-mentioned class ; but we believe it will be found upon careful examination of these

authorities that in each instance the very distinction we have been endeavoring to make is most clearly drawn. Thus in the case of *Floettl* v. *Third Avenue R. R. Co.* (10 App. Div. 308, 314), where a foreman occupied a place of responsibility and was engaged in directing " work which required skilled labor of a peculiar kind in and about an apparatus somewhat complicated in its structure," it was declared that, " In view of what was said between the plaintiff and the foreman, the only construction that can be given to the language of the foreman is that it was an assurance that the plaintiff would be exempt from the particular danger he apprehended and *from which it was obviously the duty of his employer to shield him.*"

So in *Mullane* v. *Houston, West St. & Pavonia Ferry R. R. Co.* (21 Misc. Rep. 10), where a workman was directed by a trackmaster to descend into a hole in a cable road through which the cable ran to adjust and examine some machinery with the assurance that the engineer would be directed not to start the cable while the workman was thus engaged, but the trackmaster failed to give proper directions, in consequence of which the cable was started and the workman injured, it was held that the assurance of safety related to a duty which the master owed to his servants, and that it was " not a mere detail of work as a fellow-servant, for whose misconduct to a co-worker a master is not liable."

Again, in *Bradley* v. *New York Central R. R. Co.* (62 N. Y. 99) the defendant's tracks in the vicinity of one of its stations had become obstructed by a heavy fall of snow. In this emergency the plaintiff and his team had been engaged by a trackmaster, duly authorized, to aid in removing the snow and upon the assurance that while thus engaged the party employing him would watch for and give due notice of approaching trains, and for a failure to make good this assurance the defendant was held liable. It is to be observed, however, that in hiring the plaintiff the trackmaster was concededly acting within the scope of his authority and that the promise made by him was a consideration which entered into the contract of hiring.

The present case in its main features is not unlike that of *Byrnes* v. *Brooklyn Heights R. R. Co.* (36 App. Div. 355) in which it was held that the engagement of the employee to warn and protect another who was working under his immediate supervision against

a danger which was to be apprehended from the operations of a third person engaged in the same general business, was the act of a coservant and not of the master; and we are persuaded that within the principles which we deem applicable to this case the same conclusion is inevitable. The judgment of the County Court should, therefore, be reversed and that of the Municipal Court affirmed.

All concurred.

Judgment of the County Court reversed, with costs, and judgment of the Municipal Court affirmed, with costs.