## O'BRIEN v. BUFFALO FURNACE CO.

(Supreme Court, Appellate Division, Fourth Department. January 7, 1902.)

1. MASTER AND SERVANT—INJURY TO SERVANT—KNOWLEDGE OF SUPERINTENDENT.

Where an inexperienced servant was injured by the negligence of an experienced servant in charge of a dangerous work, the fact that the master's superintendent was present, and observed such experienced servant doing the work in such negligent manner, and failed to object, did not render the master liable for the injuries, where the negligence was, with respect to a mere detail of the work, as to which such superintendent, as well as the experienced servant, was a fellow servant with the servant injured.

2. SAME—DANGEROUS WORK—INEXPERIENCED SERVANT—WARNING.

Defendant placed the work of demolishing a blast furnace stack with dynamite in charge of M., an experienced employé, and directed plaintiff, an inexperienced servant, to assist. Plaintiff was not warned as to the dangerous character of the work, and was injured by a premature explosion of dynamite, caused by the negligence of M. in tamping the same. Held that, defendant having intrusted the work to a competent servant, he was not liable for plaintiff's injuries resulting from such servant's negligence by reason of his failure to warn plaintiff of the risks of the employment.

Appeal from trial term, Erie county.

Action by Elizabeth O'Brien, as administratrix of the estate of John Coyle, deceased, against the Buffalo Furnace Company for damages sustained by the negligent killing of plaintiff's intestate. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial on the minutes, defendant appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Tracy C. Becker and Louis L. Babcock, for appellant.
Eugene M. Bartlett, for respondent.

McLENNAN, J. Upon the merits, the evidence in this case presents the somewhat novel and interesting question: Is a master who intrusts hazardous and dangerous work to a competent and experienced servant, and who directs an inexperienced co-servant to assist, without informing him of the dangers incident thereto, liable for the negligent act of the former, which results in injury to the latter because of the inherent danger of the work, simply because the

master failed to inform such assistant that the work was dangerous, and to warn him against the risks of such employment? On the day of the accident one Minor, who, it appears, and the trial court so charged, was entirely competent for the work, was engaged in removing for the defendant, by the use of dynamite, hardened refuse material from the base of a blast furnace stack which was being taken down, and for that purpose was putting dynamite blasts in certain iron pipes connected with the furnace. The plaintiff's intestate, who was a common laborer, intelligent, strong, and healthy, but who had no experience in the use of or in handling dynamite for a consider-able time previous to the accident, and while the furnace was in operation, had been working at the top of the stack. On the day of the accident, and for several days before, the defendant being en-gaged in taking the stack down, the deceased could not work at his regular employment. At about noon of the day of the accident one Bachman, who for that purpose, we will assume, stood in the place of the defendant, directed Coyle to assist Minor in removing the hardened material. He demurred at first; said he was "shaky"; "I don't like it;" but was told by Bachman there was no danger, and he finally went to assist Minor, as directed. He was not in any man-ner informed by Bachman how to do the work, or as to what par-ticular thing he should do. He was simply told to go and help Minor. It, however, clearly appears that Coyle knew dynamite was being used. The work had been going on for some time. The stack on which he was working had been taken down almost to the ground by that means, and the expressions used by him when told to assist indicate that the deceased had at least a general notion as to the character of the work which he was directed to do. When Coyle reached the stack he commenced dropping or pouring dynamite into one of the pipes connected with the furnace to make ready for a blast, presumably pursuant to the directions of Minor. He did the work properly. His act, in and of itself, was not dangerous. In fact, so far as appears, all that the deceased did was done in an entirely proper manner, and quite as well and as safely as if he had had experi-ence in handling dynamite, and had been fully informed as to the dangers incident thereto. Minor, however, for the purpose of pack-ing or tamping the dynamite in the pipe, which was necessary, negli-gently and carelessly used a small iron rod instead of a wooden rod, which he should have used, with the result that there was a premature explosion, and Coyle sustained the injuries from which he died the following day.

There is evidence tending to show that, although the fire in the furnace had been out for several days, the pipe into which Coyle put the dynamite was still hot, and that under certain conditions that would tend to cause an explosion, but there is no evidence from which the inference could be drawn that the heat of the pipe caused the explosion in question. On the contrary, it very conclusively appears that it was caused by the negligent act of Minor in using an iron rod with which to pack the dynamite in the pipe. At all events, if the pipe was hot, and for that reason it was unsafe to put dynamite into it, the fact was known, or ought to have been known,

to Minor, and he ought not to have instructed or permitted Coyle to do so. The accident occurred solely because of the negligence of Minor, who had entire charge of the work, and who, as we have seen, was entirely competent to take charge of the same, and not on account of any act or thing which Coyle did or omitted to do because of his inexperience in the use of or in handling dynamite, or because he had not been informed or did not know that the work in which he was engaged was dangerous. There is evidence that Bachman, who was defendant's superintendent, for a moment saw Minor and Coyle doing the work in the manner indicated, and it is urged that he was guilty of negligence in permitting it. Assuming that Bachman was negligent in that regard, it was with respect to a detail of the work, the performance of the duty of an operative, and as to which he, as well as Minor, was a co-servant of Coyle, and the defendant was not liable for his negligence in that regard, there being no question as to his competency. Crispin v. Babbitt, 81 N. Y. 516, 37 Am. Rep. 521; Cullen v. Norton, 126 N. Y. 1, 26 N. E. 905.

There is no question involved as to a safe or unsafe place in which the work in question was being performed. The learned trial justice expressly charged the jury that there was no evidence that the place in which the work was being done was unsafe; neither was there any evidence which would have justified a finding that the defendant failed to furnish proper tools and appliances. It is true Minor used an iron rod with which to tamp the dynamite, but it appears without contradiction that there were wooden rods or sticks at hand which he might have used, or, at least, that there was plenty of material with which to have made a suitable stick. The defendant is not chargeable with negligence because Minor selected an iron rod rather than a wooden one with which to tamp the dynamite, when either could have been obtained by him. So that, as stated at the outset, the question is presented whether or not the failure of Bachman, who, we will assume, stood in the place of the defendant in that regard, to inform Coyle that the work which Minor was engaged in, and which Coyle was instructed to assist about, was dangerous, is sufficient to make the defendant liable for the negligent act of Minor, done while engaged in such work, and which alone caused Coyle's death. The law is well settled that an employé, inexperienced in a particular work which is dangerous from causes not apparent but known to the employer, is entitled to have such information as will apprise him of the nature of the work and the necessary risk in its execution, and that if injury results because of the failure to give such information the employer is liable. Gates v. State, 128 N. Y. 222, 28 N. E. 373.

The plaintiff in that case, who was a common laborer upon the canal, by direction of the superintendent commenced work on a bridge which was being repaired. It was in a very dangerous condition to the knowledge of the person in charge, and he neglected to inform the plaintiff of the fact. The bridge collapsed because of its structural unsoundness, and the plaintiff was thereby injured. It was held (except for the statute of limitations) that the plaintiff was entitled to recover. That decision in no manner illustrates the case

at bar. If the plaintiff in that case, inexperienced as he was, had gone to work on the bridge, dangerous because of the network of timbers or its elevation from the ground, which dangers were not appreciated by him, and he had been struck and injured by a falling hammer negligently and carelessly dropped by a co-employé, would the state have been liable? In such case would the fact that the injured person had not been informed that a high bridge, complicated in design, was a dangerous place to work, have made the state liable for the negligent act of one of its émployés which resulted in injury to such person, but which injury was in no manner due to the failure to give the information? In the McGovern Case (123 N. Y. 281, 25 N. E. 373), the master, who was the owner of a grain elevator, knew that in one of the bins large quantities of grain had stuck to the sides, and was liable to fall if disturbed at the bottom. With such knowledge, and without imparting it to the plaintiff's intestate, he directed him to enter into the bin at the bottom, and commence shoveling the grain. He did as directed. The grain fell, and he was killed. It was held that the master was liable. But, again, the facts of that case are not analogous to the facts of the case at bar. Suppose the owner of the elevator, with full knowledge of all the conditions, had sent an experienced elevator man or grain handler, who was also fully informed as to the conditions, to remove the grain from the bin, and had directed another employé to assist him, who was injured by the negligent act of the experienced man in charge of the work; would the master have been liable? We think the question must be answered in the negative.

The distinction in principle which exists between the cases cited by the able counsel for the respondent and the one at bar may be illustrated as follows: A plumber directs B., an experienced and competent employé, to do a piece of work, which to his knowledge necessarily involves the escape of gas. C., another employé, who is entirely unacquainted with the dangers incident to escaping gas, is directed to assist B., without being informed of the dangerous nature of the work. B. negligently and carelessly lights a match, and an explosion occurs, which injures C. The plumber would not be liable, because C.'s injuries resulted solely because of the negligent act of a co-employé, and not because of the failure of the employer to inform him of the dangerous character of the work. Under such circumstances, it could not be said that in the exercise of ordinary care and prudence the master was required to specify in detail and inform C. of all the dangers which might result from working in a room in which there was gas. Obviously the master would have discharged his full duty when he placed in charge of such work a person who understood all the conditions, and who was competent to do the work intrusted to him. But unquestionably, in such case, if the inexperienced servant had lighted the match, not knowing it was dangerous to do so, and had thus been injured, the master would have been liable.

Again, an employer directs an inexperienced employé to operate a dangerous machine, without informing him of the risks which are not apparent. If the employè is injured because of his want of

knowledge of such dangers, the employer is liable. If, on the other hand, an experienced and competent machinist is placed in charge of the machine, and an inexperienced employé is directed to assist him in its operation, and is injured by the negligence of the machinist, the employer is not liable, although he failed to inform the assistant of the dangers incident to the operation of such machine. Any other rule, in order to be effective, would impose the duty upon the master of giving such instructions as would, in effect, make the inexperienced workman a competent machinist, because injury might result from an infinite variety of careless acts done by the machinist, —in the case of operating an engine, by letting the water in the boiler get too low; by starting the engine too suddenly or running it too rapidly; by failure to oil the parts, or to observe that it was out of repair in any respect. The employer is not required, in order to relieve himself from liability, to specify in detail all such dangers, and inform the inexperienced assistant as to the risks incident to each.

So in the case at bar. Minor was a competent servant; was experienced in the use of dynamite; had entire charge of the work in question. Plaintiff's intestate was assisting him, and while so engaged was injured, solely through the negligence of Minor in using an iron rod instead of a wooden one with which to tamp the dynamite in the pipe. The defendant did not inform the deceased that the work was dangerous, and, under the circumstances, we do not think it was required to do so, in order to relieve itself from the charge of negligence. The bare information that the work was dangerous would have availed nothing. The iron rod would have been used precisely the same and without protest by the deceased, because he had no knowledge that its use was improper. In order that the information should be useful, it was necessary that the plaintiff's intestate should have been instructed not only that an iron rod should not be used in tamping dynamite, but also given many other instructions which are necessary to be observed in order that it may be handled with safety. It would have substantially involved the converting of an inexperienced servant into an experienced and competent handler of dynamite. The exercise of ordinary care and prudence on the part of an employer does not involve such duty.

As we have seen, the place in which the deceased was directed to work was not unsafe, except as it was made so by the negligence of Minor. The tools and materials furnished by the defendant were proper and ample for doing the work, and for their negligent use by Minor the defendant is not liable. As was said in Hussey v. Coger, 112 N. Y. 618, 20 N. E. 561, 3 L. R. A. 559, 8 Am. St. Rep. 790: "He [the defendant] was not chargeable with the consequences of a place for work, made dangerous only by the carelessness and negligence of fellow servants, or for the negligent manner in which they used the tools or materials furnished them for their work." Cullen v. Norton, supra.

A master has a right, and it is often necessary, to procure dangerous and hazardous work to be done by his employés. If he places

a competent servant, who has knowledge of all the dangers, in charge of such work, he is not liable for the negligent act of such person, which results in injury to a co-employé, simply because he did not inform the person injured that the work was dangerous. He has the right to assume that the servant in charge will perform his duty properly, and is not required to inform his other servants that he may not, and is not called upon to explain what the result may be in case he does not, or to instruct them as to what they should do in case he performs some detail of the work in a negligent manner. The conclusion is reached that the evidence wholly fails to establish actionable negligence on the part of the defendant. Having reached this conclusion, it is unnecessary to discuss or determine the other questions involved upon this appeal. It follows that the judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide event.

Judgment and order reversed on the law and facts, and new trial ordered, with costs to the appellant to abide event. All concur.