(77 App. Div. 566.)

### KLOS v. HUDSON RIVER ORE & IRON CO.

(Supreme Court, Appellate Division, Third Department. December 12, 1902.)

**1. MASTER AND SERVANT—PERSONAL INJURIES—FELLOW SERVANTS.**

In an action by a servant for personal injuries, the presumption is that the master exercised proper care in the selection of servants, and if the plaintiff claims that his fellow servants were incompetent he must prove it.

**2. SAME—NEGLIGENCE—EVIDENCE—SUFFICIENCY.**

In an action by a servant for personal injuries, evidence examined, and *held* insufficient to show that a fellow servant whose alleged negligent act caused the injury was not competent to perform the duties with which he was intrusted.

**3. SAME—NATURE OF EMPLOYMENT.**

The work of removing "clinkers" from a kiln used in roasting iron ore, by drilling into them and inserting and exploding dynamite, was operative, relating to the duty of employés, and not to that of the master, and he was not liable for the negligence of plaintiff's fellow servants.

**4. SAME—WARNING SERVANT.**

The master had a right to assume that his employés, being competent, would not be negligent, and it was not his duty on employing plaintiff to inform him of possible or probable dangers in case they were negligent.

Appeal from trial term, Columbia county.

Action by William Klos against the Hudson River Ore & Iron Company. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

The defendant, a domestic corporation, is engaged in mining iron ore in the county of Columbia. In connection with its mines, and for the purpose of roasting the ore and preparing it for market, it has 10 cylindrical kilns, about 22 feet in diameter and 60 feet high. The broken rock taken from the mines, together with coal, is placed in these kilns from the top, and the fire therein roasts the ore, and the ore so roasted is drawn off through chutes at the base of the several kilns into cars. In the process of roasting the ore clinkers form within the kiln, which settle to the base of the kiln, and are-

¶ 1. See Master and Servant, vol. 34, Cent. Dig. §§ 891, 906.

sometimes so large that they cannot be drawn off through the opening into the chute. For the purpose of breaking up these clinkers, men are employed by the defendant to drill holes into such clinkers, and to apply and explode dynamite therein. There are four men so employed, known as the "clinker gang," one of whom is in charge of the work. The dynamite, caps, and fuse were kept in a small building or "shanty" in the exclusive charge of the foreman of the gang, and he cut and prepared the same for the several explosions. Sometimes he actually inserted the dynamite into the drilled hole and exploded the same, but that work was principally done by one S., who was one of the four men, and the one who had been doing that work for months, and for as long a time as the witnesses sworn had knowledge of the work. In 1899 the plaintiff was engaged as one of the "clinker gang." The particular part of the work performed by him was striking the drill used in making the holes for the insertion of the dynamite. The said S. held the drill while plaintiff and another man struck the drill alternately with heavy hammers. The third day that plaintiff was so employed a very large clinker was found in front of the opening at one of these kilns, and he, with his fellow laborers, went to the kiln for the purpose of drilling a hole therein and breaking the clinker with dynamite, as stated. The hole was drilled 9 or 10 inches deep. The foreman cut off the required piece of dynamite, and prepared the same with cap and fuse attached for the purpose of insertion in the hole. Shortly thereafter S., who had been holding the drill, inserted the piece of dynamite in the hole so drilled, and then fastened the same with some prepared clay. S. then went to get some waste and kerosene to be used in lighting the fuse, while the plaintiff was removing the drill and other tools, and while he was so engaged removing the tools the dynamite prematurely exploded, causing the injury for which this action is brought. The plaintiff was instructed as to the use of the hammer, but was not instructed as to the use of dynamite, or as to the dangers attending its use. His duties did not require him to handle the dynamite. Further facts appear in the opinion.

Argued before PARKER, P. J., and KELLOGG, SMITH, CHASE, and CHESTER, JJ.

Andrew J. Skinner, for appellant.

Smith, Conway & Weed (Frank E. Smith, of counsel), for respondent.

CHASE, J. Although plaintiff had only been in the defendant's employ for three days, and he says that he never saw dynamite before, yet he was to some extent familiar with the dangers incident to its use. He says:

"I heard them talk about it a good deal. I heard it was very dangerous. The first day I went there and worked there I heard if you put a cartridge in it would go off. I did not hear it would go off without any apparent cause. I heard it would not explode except you put a cartridge in."

Plaintiff not only knew that dynamite was explosive and dangerous, but he knew that this particular piece of dynamite had been prepared for explosion, and that the same would explode as soon as fire was applied by way of the fuse. He had seen dynamite so exploded a great many times. The clinkers were formed in that part of the kiln which was heated to the extent of three thousand to four thousand degrees. It was from the place so heated that the clinkers dropped down at the opening of the kiln. When the clinkers first dropped they were heated to a very high degree. After they remained at the base of the kiln a sufficient length of time they became cool. Dynamite will explode by heat without coming in contact with a blaze. It

would seem that ordinary intelligence in connection with the general and special knowledge that the plaintiff possessed would be sufficient to suggest that the use of dynamite in close proximity to great heat and in material more or less heated was necessarily attended with danger. The only negligence claimed in the use of the dynamite itself is in placing the same in the clinker before it had sufficiently cooled. The necessity of having the clinkers cool was known to the workmen in charge, for it appears that it was common practice to put water on the hot clinkers from a hose to cool them. Any negligence in connection with the use of the dynamite was the negligence of those employed with the plaintiff in the performance of the same general business of the defendant. The presumption is that defendant exercised proper care in the selection of these servants. It was incumbent on the plaintiff, if he claims that his fellow servants were incompetent, to have shown it by proper evidence. Plaintiff's evidence shows that this work was being done in substantially the same way by the same men other than the plaintiff for several months, and although a great many clinkers were broken with dynamite every day not a single specific act of negligence by any of them was shown, and the only testimony called to our attention that it is claimed indicates the incompetency of S. is that of one witness, who says: "During that time, from the time I came there up to this Wednesday, when the plaintiff was injured, he was shooting most of the time,—worked around the same as the rest of us; he was a laboring hand." This witness was one of the clinker gang, and at the time of the accident had worked there with S. in such gang for more than four months. All the knowledge that witness seems to have had on which to characterize S. as a "laboring hand" is the fact that so long as he had known him "he was shooting most of the time." This is not sufficient to show that S. was incompetent to perform the duties with which he was intrusted. A master has a right to assume that a competent servant will perform his duty. The possible negligence of a fellow servant was assumed by plaintiff when he accepted his employment.

Where one servant is injured by the negligence of a servant employed by the same master, the liability of the master is determined solely by the question whether the offending servant was negligent respecting a duty pertaining to an operative or respecting a duty owing from the master to the injured servant. If it pertained to the master's duty, then the master was liable if he or the servant to whom he delegated the duty failed to use the requisite care. Thomas, Neg. 866; Crispin v. Babbitt, 81 N. Y. 522, 37 Am. Rep. 521.

The liability of the master depends upon the character of the act in the performance of which the injury arises, without regard to the rank of the employé performing it. Crispin v. Babbitt, Id. All the acts connected with the work of blasting the clinkers related to the duty of the employés. If there was any negligence in the performance of the work intrusted to them, it was the negligence of plaintiff's fellow servants, for which defendant is not liable. Vitto v. Keogan, 15 App. Div. 329, 44 N. Y. Supp. 1; Green v. Smith, 169 Mass. 485, 48 N. E. 621. The defendant had a right to assume that competent employés would not be negligent in their work, and it was not neces-

sary for it to inform the plaintiff of possible or probable dangers that would arise in case of negligence on the part of his fellow employés. O'Brien v. Furnace Co., 68 App. Div. 457, 73 N. Y. Supp. 830.

The judgment should be affirmed, with costs. All concur.