RIOLA v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department.  September 27, 1904.)

1. MASTER—INJURY TO SERVANT—NEGLIGENCE—SPECIAL CONTRACT—AUTHORITY
   OF FOREMAN—EVIDENCE—SUFFICIENCY.
   In an action for injuries to an employé resulting from being struck by
   a train while cleaning a switch with a broom, proof merely that the yard
   foreman in charge of the work said to the plaintiff that he would tell him
   when a train was coming is insufficient to carry the case to the jury on
   the question whether the foreman had authority to bind the defendant by
   his promise, there being no claim that the foreman was specially author-
   ized to make the promise.

2. SAME—FELLOW SERVANT.
   A railroad yard foreman, without authority to make special contracts of
   employment, is a fellow servant with the employés in his charge.
   Spring and Hiscock, JJ., dissenting.

Appeal from Special Term, Monroe County.

Action by Gaetano Riola against the New York Central & Hudson
River Railroad Company.  From a judgment for plaintiff and an order
denying a motion for a new trial, defendant appeals.  Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS,
HISCOCK, and STOVER, JJ.

Harris & Harris, for appellant.
George Raines, for respondent.

STOVER, J.  The complaint in this action alleges that plaintiff for
some time prior to the date of the accident (October 9, 1901) had been
employed by the defendant as a common laborer upon a work train
operated by the defendant, and that at the time of the accident he
was employed in working upon and around defendant's switches and
tracks in and about the railroad yards at Niagara Falls, N. Y.; that
by reason of the negligence of the defendant in neglecting to give sig-
nals of the approach of a train, its failure to use diligence in the selec-
tion of servants and agents, its employment of an incompetent fore-
man, and the carelessness, negligence, and unskillful management by
the defendant and its employés, its neglect and failure to ring a bell
or blow a whistle, and the failure of the foreman over and in control
of this plaintiff to give plaintiff signal of the train's approach, he was
struck by a train, and thrown to the track in such a way that the wheels
of the train and locomotive passed over and mutilated plaintiff's legs
and body.  The evidence shows that plaintiff was, and for some time
prior to the accident had been, in the employ of the defendant upon a
work train; that at the time of the accident he was engaged in work-
ing near a switch sweeping with a broom, and the engine backing down
behind him struck him as he was stooping over cleaning a point on
the switch, and injured him seriously.  He testified that prior to the
accident, while he was standing up, the boss asked him why he did
not work, and he said, "The train coming; I want to see, watch the
train coming." He said, "Never mind, work; I will tell you when
train coming." The foreman making this statement was one Doyle.
The foreman and conductor of the work train having charge of all of

the work train gang was one Donahue, but on this particular occasion Donahue had left the yards, taking a portion of the gang of the work train with him to Tonawanda to clear away a wreck, leaving the remainder in the yard at Niagara Falls under the charge of Doyle.

The trial court charged the jury that, if Doyle promised to watch for the train and warn the plaintiff of its approach, and failed and neglected to do so, the jury were authorized to find that defendant was guilty of negligence. To this instruction an exception was taken. The court was requested to charge:

"That if the jury find that the plaintiff had begun to work under Doyle as foreman, the latter gave assurance or promise to the plaintiff that he (Doyle) would notify the plaintiff of any danger of a train or engine, and that the plaintiff need not look out for himself, that such assurance or promise was that of a fellow servant, for which the defendant is not responsible."

This was declined, and the defendant excepted. The court stated:

"Of course, that would be true, and I would charge it, except that I think my charge should stand as it has already been given, providing the jury find that Doyle had authority to hire and discharge these men, and to direct them as to what they should do, and the manner in which they did their work, and in that capacity represented the master and acted as its agent."

An exception was taken to the submission to the jury of the question as to whether Doyle was authorized to make any such promise. The testimony of the plaintiff as to the employment was:

"I was hired by Vincenzo Maragandi, who engaged the labor for the New York Central. The foreman under whom I worked at Tonawanda was Patsy (Patrick Donahue). Patsy was foreman, and he was conductor, too, of the work train. I worked upon the work train, doing everything—unloading and loading ties and rails, etc., and putting them in the tracks wherever the work train took us in our work. I was part of the work train gang. I had worked in Niagara Falls yards five days before the accident, but not in the same place. It was between the bridge and Niagara Falls, under another foreman, and then I went back to the work train again, and then another morning they fetched me to Niagara Falls to work in the place where the accident happened. Q. Who told you where to work? A. Patsy. He left us there. I had worked in the Niagara Falls yard before the morning that I was hurt. Q. How many times? A. Every time we were going to load the ashes with the work train. We worked there gathering up ashes and cleaning. I had worked under John Doyle, section boss. He was boss over the gang. Q. How did you come to go under him that morning? A. It was a wreck in Tonawanda, and Patsy took seven or eight men and took them to Tonawanda, and left us under this foreman, John, in the Niagara Falls yard."

We think the evidence clearly establishes that Doyle was the foreman of the gang about the yard, and that the evidence did not establish that he was authorized to make any special contract or promise on behalf of the defendant by which it should become responsible for his acts or negligence in the discharge of his duty as foreman of the gang. The testimony of Doyle himself was that he had no authority whatever to make any rule or regulation for the company in regard to the men, or in regard to giving them notice of the approaching trains. The case was left to the jury to determine whether Doyle had authority to make a contract, and, as stated by the court, it being assumed as the law that, unless there was such a contract, the failure of Doyle to give the signal to the plaintiff was not chargeable to the defendant. We think the evidence did not warrant the submission of that question to

the jury. Plaintiff and Doyle were at the time employés of the defendant, the original hiring having been entered into some months previous to the time of the accident. The original contract of hiring contained no stipulation of this kind, and the only basis for a holding that there was a contract is the statement of the foreman to his fellow employé that he would look out for trains. It is sought to make this statement a binding contract as against the defendant and a guaranty that it would notify him of approaching trains. The rules formerly governing the relation of master and servant have been in some particulars modified or extended in favor of the servant, but the proposition that a statement of a foreman as to the manner in which he intends to perform the detail of the work under his control constitutes a guaranty on the part of the master that he will thus perform it is certainly novel. The situation we have is this: The master has furnished a reasonably safe place to work in; that is, a place which is as safe as the business required permits, and which is not made more dangerous by any negligence of the defendant. It is not contended that the danger was one not known, but the contention is that the danger arose and the injury was caused by reason of the failure of the foreman to give the notice. What was the common-law liability of the master under these circumstances? It was to furnish a reasonably safe place, proper appliances, and competent foremen. There is no evidence in this case that the foreman was an incompetent foreman. There is no evidence that any improper appliances were used. An employé, with full knowledge of the danger incurred in working upon a railroad track where moving trains and engines are in operation, supplied with a competent foreman, with proper appliances for his work, assumes the apparent risks; the law leaving the details of the accomplishment of the work to the judgment of the foreman, without imputing negligence to the defendant upon his failure to exercise proper judgment. This was a detail of the work which was properly left to the judgment of the foreman. Perry v. Rogers, 157 N. Y. 251, 51 N. E. 1021. Doyle's duty was to see that the work was properly performed by the men under him, but his statement that he would look out and see if the train was coming had no more binding force upon the defendant as a contract than the statement of any other employé engaged in the same common employment with the plaintiff. Doyle's statement in that regard we think is not to be construed as a contract, but rather as a statement of an employé engaged in a common employment to a fellow employé that he will discharge a part of the work which is incumbent upon both to see is performed. The fact that the person making the statement is a foreman makes it no more binding as a contract than if made by any other member of the gang, it being a statement and direction as to the manner of performing the detail of work, which was properly left to the judgment of the foreman. If Doyle had placed a man on guard to watch for trains, and this man had failed to warn plaintiff of an approaching train, could it be said that this negligence was imputable to defendant, and was not that of a fellow servant? The case of Bradley v. The New York C. & H. R. R. Co., 62 N. Y. 99, is a peculiar case, resting upon its own facts, and the decision is there put upon the fact that it was part of the original condition of hiring that the plain-

tiff should be notified of the trains, and without which he would not have undertaken the service; the authority to make the contract having been found. But in the case under consideration the statement of the foreman we think cannot fairly be construed as a contract binding upon the defendant. In fact, the complaint in this action is the usual complaint, setting up the common-law liability of the defendant by reason of negligence in various particulars, and contains no suggestion that it is not based upon the ordinary liability created by the relation of master and servant.

We are cited to a number of adjudications which by implication are said to bear out the theory of the plaintiff in this case, and, as is usual, there are features similar to the case under consideration attaching to most of the cases cited. But we think the facts in this case bring it clearly within the well-defined rules governing master and servant, namely, that the duty of the master was to furnish a reasonably safe place, proper appliances, and competent foremen, leaving the detail of the work to the judgment of the foreman; and in these respects the master has not been shown to be guilty of negligence. The statement made by Doyle to plaintiff that he would watch for trains was not a warranty or contract of any character on the part of the defendant, but was a direction as to a detail of the work which was properly within the charge of the foreman. The negligence, if any, in the failure to give notice of the approach of the switch engine, was that of a fellow employé, for which the master was not liable. The instruction of the court was, therefore, erroneous, and the judgment and order should be reversed, and a new trial granted.

Judgment and order reversed, and a new trial granted, with costs to the appellant to abide the event. All concur except SPRING and HISCOCK, JJ., who dissent.