It was not necessary that Wheeler's authority as general manager should be in writing. As one step toward proving that Wheeler had such authority as authorized him to bind the defendant by an account stated, the plaintiff had the right to prove, by witnesses who knew from seeing what he did over various periods of time, the capacity in which Wheeler acted, and what he was doing and was permitted to do in behalf of the defendant corporation. Especially did plaintiff have the right to prove by the vice president of the defendant, who was actively engaged in the building of the railroad in question and thus familiar with the defendant's business, the capacity in which Wheeler acted, and, if he had personal knowledge of the fact, as it would seem he did, what authority had been given to him by the defendant corporation.

The plaintiff could not prove authority by one question only, or by proving one lone act of Wheeler. He should, however, have been permitted to prove such facts as he could, showing in what manner Wheeler acted, and what actual or apparent authority he had, and it would then have become a question as to whether or not authority had been proven in him to make an account stated on behalf of defendant. An account stated being simply an agreement between parties who have had previous monetary transactions that all the items of the accounts representing such transactions are true, such agreement need not necessarily be made by the parties personally, but may be made in behalf of either party by an agent having authority. Wiley v. Brigham, 16 Hun, 106; Lloyd v. Carrier, 2 Lans. 364; 1 Am. & Eng. Ency. (1st Ed.) 437.

The defendant may have clothed Wheeler with such authority as to bind it by a statement of account respecting work performed and money due for construction of the railroad which it was building. In any event, plaintiff should have been permitted to prove such authority as he was able, whether any one fact sought to be established in itself showed complete authority or not.

Whether the action is prematurely brought, as is alleged by the defendant, is not now before us; for the facts in that respect were not developed upon the trial. Nor is the question presented whether sufficient authority was shown in Wheeler to make an account stated binding upon defendant, because plaintiff was not permitted to develop his facts in that respect.

The judgment and order must be reversed, with costs to appellant to abide the event, and a new trial granted. All concur.

---

LA PLACA v. LAKE SHORE & M. S. RY. CO.

(Supreme Court, Appellate Division, Fourth Department. July 7, 1908.)

1. MASTER AND SERVANT—DEATH OF SERVANT—RAILROADS—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In an action for death of a waterman with a railroad track crew by his being struck by an express train as he stepped on an adjoining track, thinking that a warning by the foreman related to a freight train which was about to move, evidence *held* to require submission of defendant's

negligence in failing to give adequate warning of the approach of the
express train and plaintiff's contributory negligence to the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Serv-
ant, §§ 1010–1050.]

2. SAME—FELLOW SERVANTS—"VICE PRINCIPAL"—DUTY TO WARN.

Under Laws 1902, p. 1748, c. 600, making the master liable for death
of an employé caused by the negligence of any person in the service of the
employer intrusted with or exercising superintendence, whose sole or
principal duty is that of superintendence, etc., as supplemented by Laws
1906, p. 1682, c. 657, declaring that persons having authority of superin-
tendence, control, or command of other persons in the employment of a
railroad or with authority to direct or control any other employé in the
performance of his duty, etc., are vice principals, and not fellow servants,
the foreman of a railroad section crew in the performance of his duty to
warn a member of the crew of the danger from an approaching express
train was a vice principal, and not a fellow servant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Serv-
ant, §§ 422, 493–514.

For other definitions, see Words and Phrases, vol. 8, pp. 7313–7316,
7327.]

McLennan, P. J., and Williams, J., dissenting.

Appeal from Trial Term, Erie County.

Action by Concetta La Placa, as administratrix of the estate of
Liborio La Placa, deceased, against the Lake Shore & Michigan
Southern Railway Company. From a judgment for plaintiff for $1,-
722.83 damages and costs, and from an order denying defendant's
motion for a new trial, it appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS,
KRUSE, and ROBSON, JJ.

Thomas D. Powell, for appellant.
Horace O. Lanza, for respondent.

KRUSE, J. The action is for damages resulting from the death
of plaintiff's intestate, caused through the negligence of the defend-
ant. The deceased was working for the defendant on its railroad,
and was struck by a train and killed. The jury rendered a verdict
in favor of the plaintiff.

The defendant urged upon the trial, and still insists, that the evi-
dence failed to show either that it was negligent or that the deceas-
ed was free from contributory negligence; and those questions were
presented by various exceptions, as well as by a motion made on
defendant's behalf for a new trial, upon the minutes of the presid-
ing justice. The trial court held against the defendant's contention.
The accident happened on the morning of August 31, 1906, at a
point about a mile west of Angola, where the defendant has four
tracks, being the main line of its railway from Buffalo to Chicago.
The tracks are numbered, respectively, 1, 2, 3, and 4, from the
south side to the north. On the two southerly tracks, Nos. 1 and 2,
the defendant runs its west-bound trains; No. 1 for freight trains,
and No. 2 for passenger trains. On the two northerly tracks, 3 and
4, its east-bound trains are run; passenger trains on No. 3 and freight
trains on No. 4. The tracks are straight toward the east for the dis-
tance of about one-half or three-fourths of a mile. The men, about

40 in number, were engaged in raising up track No. 1, and putting in new ballast. It was the duty of deceased, a man 51 years of age, to supply the workmen with drinking water. Just before the accident happened, he was passing among the workmen, engaged in that duty. A west-bound freight train approached on track No. 1. A rail was being raised, and the train was flagged. It stopped within 10 or 15 feet of where the men were at work. The bell on the engine which had been ringing stopped ringing. What occurred after this is in dispute, but the evidence fully sustains the claim of the plaintiff, that, when the track was lowered and ready for the freight train to pass over it, the bell of the freight engine began ringing again, and about the same time the foreman gave the warning, "Look out, boys," stepping away from track 1, and toward or on track 2. At that time an express train was coming on track 2. It seems that the warning was intended for the express train, but the deceased evidently thought that the foreman referred to the freight train, and stepped over onto track 2, with other workmen, and was struck by the express train coming from the east.

It was contended on behalf of the plaintiff that the deceased was not sufficiently or adequately warned of the approach of the express train, and the sole question submitted to the jury as regards the defendant's negligence was its failure to give reasonable, sufficient, and adequate warning to the deceased of the approach of this train. We think this question, as well as that of the contributory negligence of the deceased, was properly submitted to the jury, and that the evidence sustains the verdict. At the time the warning was given the deceased was busily engaged in his work, and, besides, the freight train, consisting of about 70 cars, to some extent obstructed the view of the approaching express train. Beyond that the bell of the freight train had commenced ringing. The track was ready for that train to proceed. The foreman, who was standing between tracks 1 and 2 when he gave the warning, stepped away from the freight train track, and it is not at all unreasonable that the deceased should have assumed that the warning was intended for the freight train.

It is contended, however, on behalf of the defendant, that the failure of the foreman to properly warn the deceased was the act of a fellow servant, for the negligent performance of which the defendant is not liable. Very likely that would be true under the common-law rule (Riola v. New York Central & Hudson River R. R. Co., 97 App. Div. 252, 89 N. Y. Supp. 945, affirmed in 184 N. Y. 596, 77 N. E. 1196; Curran v. Manhattan Railway Company, 118 App. Div. 347, 103 N. Y. Supp. 351), but it seems clear that under the provisions of the employer's liability act (Laws 1902, p. 1748, c. 600), as supplemented by the so-called Barnes act (Laws 1906, p. 1682, c. 657, being section 42a of the railroad law), the foreman was the alter ego and vice principal of the defendant as regards the negligent act, and that it is liable therefor. Schradin v. N. Y. C. & H. R. R. R. Co. (Sup.) 109 N. Y. Supp. 428; Brown v. N. Y. C. & H. R. R. R. Co. (decided in this department May 5, 1908. Not yet officially reported) 110 N. Y. Supp. 514. We think the evidence sustains the

verdict of the jury, and that none of the exceptions taken by the appellant and urged upon our attention was well taken.

The judgment and order should therefore be affirmed, with costs. All concur, except McLENNAN, P. J., and WILLIAMS, J., who dissent.