### KIRKOVER v. LACKAWANNA STEEL CO.

(Supreme Court, Appellate Division, Fourth Department. November 17, 1909.)

MASTER AND SERVANT (§ 190*)—INJURY TO SERVANT—NEGLIGENCE—LIABILITY.

A servant was injured by the starting of a shaft. The appliances used to set the shaft in motion were in perfect order. He stopped the shaft by the appliances, and the foreman assured him that he would see that no one started the shaft. A rule of the employer forbade employés to set in motion any machinery without assuring themselves that there were no persons about it. *Held*, that the master was not liable at common law for the negligence of the foreman in not seeing that no one set the shaft in motion, as the master was not bound to protect the servant from the danger that another would start the shaft without authority and in violation of a rule.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 454; Dec. Dig. § 190.*]

Appeal from Trial Term, Erie County.

Action by William H. Kirkover against the Lackawanna Steel Company. From a judgment for plaintiff entered on the verdict of a jury, and from an order denying a motion for a new trial made on the minutes on all the grounds specified in Code Civ. Proc. § 999, defendant appeals. Reversed, and new trial ordered.

This is an action at common law, commenced on the 5th day of March, 1908, to recover damages for injuries sustained by the plaintiff while in the defendant's employ, alleged to have been caused solely through the negligence of the defendant.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Evan Hollister, for appellant.
Edwin L. Dolson, for respondent.

McLENNAN, P. J. The important question presented by this appeal is: Does the evidence, interpreted most favorably to the plaintiff, tend to establish actionable negligence on the part of the defendant?

The defendant is a manufacturing corporation, engaged in operating an extensive plant at West Seneca, near the city of Buffalo, consisting of furnaces, foundries, machine shops, etc. The plaintiff was in-

<hr>

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

jured on the afternoon of Sunday, December 9, 1905, while engaged in operating a machine known as "No. 1 pig machine," used for the purpose of molding molten iron into small bars, called "pigs." The machine which plaintiff was operating, or the parts involved in this litigation, consisted of a string of small molds or pans attached together, and which, by an endless chain, were drawn from the casting house, so called, to a large cooling tank of water, through which the molds were passed for the purpose of hardening or cooling the contents of each into solid bars or "pigs," and when so cooled the "pigs" were discharged from the molds as they were passed over a large wheel at the top of the cooling tank, and after they had been thus emptied they passed, bottom side up, by means of the endless chain, to the starting point, where they were refilled and the same process was repeated. The wheel at the top of the tank, around which the endless chain loaded with the molds passed, was caused to revolve by means of a shaft, on which there was a smaller wheel, the gear of which meshed into the large wheel over which the endless chain passed. The shaft was operated and caused to revolve by means of an electric motor.

It was conceded that the endless chain, which carried the molds over the big wheel at the cooling tank, could not be made to revolve unless the shaft upon which was the smaller wheel revolved, and that such shaft could not be made to revolve unless the power from the electric motor was applied to it. The power from the electric motor was applied to the shaft by means of a switch, which, when pushed back into a standard, turned the power on, and the shaft revolved, and caused the endless chain to pass around from the casting house over the large wheel at the cooling tank, and so on around. When the lever or switch was pulled out, the shaft stopped instantly, as did the endless chain and the other parts of the machinery here involved. The plaintiff had charge of the switch. The machine was stopped or started at his will. There is no claim that he did not thoroughly understand its operation, and know exactly how to turn on and off the power, and thus to stop or start the machine. No other employé had any business with, or the right to interfere with, the operation of the switch, or turning the power on or off of the shaft.

The plaintiff testifies that, while engaged in operating the switch and at his regular place of work, he discovered that one of the bearings in which the shaft was revolving was running hot; that he shut off the power, stopped the shaft and the other machinery referred to, went to the floor under the hot bearing, and notified his foreman, a Mr. Davis, of the difficulty. He testifies that the foreman asked him if the machinery was stopped, was told that it was, and that then the foreman told the plaintiff to go upon a ladder which was standing near the shaft, which was about 12 feet from the floor, and look at the hot bearing, and see how bad it was. The plaintiff testified that the foreman assured him that when the shaft was stopped it was safe to go up and examine it, and that it could not start unless the plaintiff himself started it. The plaintiff thereupon ascended the ladder to examine the hot bearing, as he states, and while there his body swayed upon

the ladder and came in contact with the gearing of the two wheels referred to, the shaft started at that instant, and he was drawn in between the cogs or gearings and received the injuries of which he complains.

There is much testimony which tends to show that the plaintiff did not stop the machinery, as he was directed to do before going upon the ladder; but the jury found that he did so stop it, and that it started without his agency. We think the finding of the jury upon that issue is contrary to and against the weight of the evidence. But, assuming that the version of the transaction is as the plaintiff testifies, did he establish negligence as against the defendant? It is conceded in the case that the electrical appliances, the motor and switch, were in perfect order; that when the lever or switch was pushed back into the standard the shaft was set in motion and revolved; that when the switch was pulled out or opened, as it is called, it was impossible for the shaft or any other part of the machinery to move. The plaintiff testifies that before leaving his place at the switch he stopped the machinery by opening or pulling out the switch, and, as we have seen, he testifies that while he was engaged in examining the hot bearing the shaft suddenly started to revolve, and the sole ground of negligence is predicated on the fact that, as the plaintiff testifies, the foreman assured him that the shaft could not start unless he (the plaintiff) started it, that he relied upon such assurance of safety, that the shaft did start, notwithstanding such assurance, and that, therefore, the defendant is liable for the injuries which the plaintiff sustained.

Concededly, as we have seen, the electric motor, the switch, and all the appliances connected with the operation of the machine in question were in perfect order and repair, and there is no suggestion in the evidence that the method of operation was improper. The shaft, when stopped, could not be set in motion, except by human agency, to wit, by some one taking hold of the switch with his hand and pulling it out. So that it is demonstrated in this case that, if the plaintiff shut off the power and stopped the shaft from revolving, it did not start revolving again until some of the other employés, or an outsider, put the switch in and thus set the shaft in motion. As before said, no one had any business to thus interfere with the switch, and there was no occasion for such interference. It was absolutely under the control of the plaintiff. It appears that the defendant had promulgated a rule as follows:

"Employés are forbidden to set in motion any machinery or turn on gas, steam, water or electricity without first assuring themselves by personal investigation that there are no persons in or about such machinery, pipes, or other receptacles, or in contact with any wires or other conductors of electricity whose safety is endangered by so doing. And any employé disregarding this rule will be discharged from the service of this company."

There is no suggestion that this rule had ever been violated prior to the time of the accident, or that it had not been strictly enforced. That being the situation, the assurance given by the foreman to the plaintiff, construed most broadly and most favorably to the plaintiff, was that he (the foreman) would see to it that no employé of the defendant, or other person, closed the switch and started the shaft in

motion while the plaintiff was on the ladder examining the hot bearing. There is no suggestion in the evidence that the foreman was not competent, or that he had ever been guilty of neglect of duty while occupying such position. The plaintiff knew, as well as everybody knew, that if the switch was closed by any employé or other person, in violation of the rule promulgated by the defendant, the shaft would at once commence to revolve. So that the question of law is presented: Assuming that the foreman gave the assurance which it is claimed he did, and that he was negligent in not seeing to it that no employé or other person set the shaft in motion, is the defendant liable because of such negligence?

We think the authorities compel a negative answer. In the case of Schott v. Onondaga County Savings Bank, 49 App. Div. 503, 63 N. Y. Supp. 631, a case decided by this court, the facts were as follows: A trench was being filled with earth, dumped from wheelbarrows and tramped down by a gang of men stationed in the trench for that purpose. One of the workmen, who was directed to go into the trench by the foreman, stated to the latter:

"It is a pretty spookish place. It is a pretty deep hole. Somebody will get hurt there."

To which the foreman replied:

"No; I will stand right here and watch."

Some of the earth and stones fell upon the plaintiff, who was in the trench, and he sustained the injuries for which he sought to recover. Adams, P. J., writing the unanimous opinion of the court, said:

"But, it is said, there was an express assurance of security from the very danger which produced the injury complained of. This is doubtless true, but we fail to see wherein that circumstance authorizes the plaintiff to invoke any other or different rule; for the fact remains that both he and Eagan (the foreman), as well as the man with the wheelbarrow, were engaged in executing the details of the work. It was, therefore, no part of the defendant's duty to protect the plaintiff from the negligence of a fellow servant, and consequently, when Eagan undertook to warn and protect the plaintiff from a hazard of this character, he was acting in his individual capacity, and not as the alter ego of the defendant."

The court, in that case, further said:

"But, generally speaking, it may be asserted that, when an assurance of safety is given respecting a danger from which the master is bound to protect his employé, the master is obligated by that assurance, whether it be given by himself or by some subordinate, who, for the time being, represents him; but, on the other hand, if the assurance relates to a mere detail of the work, the master is not bound, even though it be given by his alter ego, and we think the difficulty in this case has arisen from a failure to distinguish between these two classes of cases."

In the case at bar the master was not bound to protect his employé, the plaintiff, from the danger that another employé would start the shaft in motion without authority, and without any necessity for so doing, and in violation of the defendant's rule, which sought to pro-

hibit just such action. The switch, as we have seen, was in perfect order, was in condition to perform every function for which it was designed, and, if stopped by the plaintiff, it was set in motion by the unauthorized act of a co-employé.

In the case of Byrnes v. Brooklyn Heights R. R. Co., 36 App. Div. 355, 55 N. Y. Supp. 269, it was held that a carpenter who, while employed by a railroad company in the rebuilding of car stables, is injured in consequence of a ladder, on which he is standing, near one of the tracks leading from the stables, being thrown down by a horse which was attached to a cart used in removing débris which had accumulated during the building, of the approach of which cart another employé of the railroad company had promised, but failed, to warn him, must be deemed to have accepted the risks incident to his employment, and to have sustained such injuries as the result of the act of the driver of the cart, who was a co-employé and in no wise the alter ego of the railroad company.

The case of Curran v. Manhattan Railway Company, 118 App. Div. 347, 103 N. Y. Supp. 351, was an action at common law, and it was shown that the master employed a foreman to warn laborers working upon the railroad tracks of the approach of trains, and that the plaintiff, an employé, was injured during a temporary absence of the foreman, and, as a result, the plaintiff was struck by a train, which approached without warning, and was injured. It was held that the foreman was not the alter ego of the master, and that his neglect was that of a fellow servant; and it was further held that by furnishing a competent foreman to give warning the master performed its duty, and was not liable for the negligent acts of the foreman in the management and detail of his work.

In the case of Riola v. New York Central & Hudson River Railroad Company, 97 App. Div. 252, 89 N. Y. Supp. 945, a case also decided by this court, a promise was made by a section foreman in the employ of the railroad company to a member of the gang of men at work under him to give such man, who was engaged in sweeping a switch, warning of the approach of trains. The foreman neglected to give such warning, and a train, without warning, struck the plaintiff, and he was injured; and it was held that the railroad company was not liable, in the absence of evidence that the foreman had authority to make such promise, and that consequently the negligent failure of such foreman to keep his promise, in consequence of which the workman to whom it was made sustained injuries, was not negligence for which the defendant was liable.

I do not see how these cases are distinguishable upon principle from the case at bar. There was no hidden danger to be apprehended. The plaintiff knew, as well as the foreman, that if the shaft started he would be in a dangerous position, and for that reason, before going upon the ladder, he stopped the shaft, and he was told by the foreman practically that it was only safe to go to the shaft when it was stationary, and, as before suggested, he knew perfectly well that any other employé or any other person could set the shaft in motion instantly by closing the switch, and that it could not be put in motion in

any other way. So that we think that the assurance given by the foreman practically that he would see to it that the shaft was not set in motion by some other employé acting without authority and in violation of the rule promulgated by the defendant, and his failure to keep such promise, was his individual negligence or fault, and for which the defendant is not liable.

The case of Floettl v. Third Avenue Railroad Company, 10 App. Div. 308, 41 N. Y. Supp. 792, relied upon by respondent's counsel, is easily distinguishable from the case at bar. There a servant of the defendant was practically commanded to go into a deep trench over which the cars of the railroad company (not of the defendant, who was held liable) were to pass. The plaintiff objected to going into such trench because of the danger which would result in case a car passed along the track while he was in the trench. The defendant's foreman assured him that no car would pass until a certain time; and it appears that the foreman had no right or authority to give such assurance, that the cars which were expected to pass were not under the control of the defendant, and that before the time specified a car of the railroad company did pass over the trench, and the plaintiff was injured, and it was held that the defendant contractor was in that case liable. There was no question in that case of co-employé as between the person operating the railroad car and the plaintiff. The case would be analogous to the one at bar, if the plaintiff had been an employé of the railroad company, and a rule had been promulgated, or notice given, that no car must pass over the trench in which the plaintiff was working, and while he was so engaged an employé operating the railroad car had negligently and in violation of his master's rule run over the trench and thus injured the plaintiff.

The defendant was only required to exercise reasonable care to protect the plaintiff against dangers which it knew, or ought to have known, existed. It furnished him with an appliance, perfect in every respect, which enabled him to stop the machine which he was operating at will, and which was so arranged that, after being stopped, it was impossible for it to be put in motion, except by the plaintiff himself, or by the unauthorized act of a co-employé, or a trespasser, and which unauthorized act it sought to prevent by promulgating a rule prohibiting the same, and which rule, so far as appears, had always been obeyed.

We think the defendant was not liable because its foreman assumed to assure the plaintiff that the machine in question would not start unless he (the plaintiff) started it, and neglected to make such assurance good, especially without proof that he was authorized by the defendant to give such assurance. The defendant is not liable because its foreman, without authority, gave the assurance that the machine would not start unless the plaintiff himself started it, and then failed to follow it up by going to the switch, where the plaintiff had just left, and there stand guard to see that no other employé set the machine in motion in violation of the express rule of the defendant, which had been duly promulgated and always prior to the accident had been strictly obeyed.

It follows that the judgment and order appealed from should be reversed, and a new trial granted, with costs to appellant to abide the event.

Judgment and order reversed, and new trial ordered, with costs to appellant to abide event. All concur; SPRING, and KRUSE, JJ., in result only.